## STEPHENS v. BEAVER DAM DRAINAGE DIST.

### [86 South. 641. No. 21398.]

1. DRAINS. *Drainage district held not liable for negligence causing flooding.*

In the absence of a valid statute imposing liability therefor, a pub-lic corporation created *in invitum* for the purpose of discharg-ging a public function is not liable for the negligence of its of-ficers, agents, or employees.

2. DRAINS. *A drainage district held an "involuntary public corpora-tion."*

A drainage district organized under chapter 269, Laws of 1914, Hemingway's Code, section 4453 et seq., which provides for the organization of such districts without the consent of all and over the protest of part of the landowners therein, is an "in-voluntary public corporation."

3. EMINENT DOMAIN. *Requirement of due compensation inapplicable to unauthorized acts of officers or agents of corporation.*

Section 17 of the Mississippi Constitution, which provides that "private property shall not be . . . damaged for public use, except on due compensation being first made to the owner or owners thereof," has no bearing on the liability *vel non* of a corporation either public or private for the unauthorized acts of its officers and agents.

4. DRAINS. *Drainage act held not to impose on a drainage district liability for "damages" from negligence.*

The provision in chapter 269, Laws of 1914, Hemingway's Code, section 4453, et seq., under which drainage districts may be or-ganized for the assessment and payment of all "damages" that will accrue to any landowner by reason of the improvements proposed to be made in the district, does not contemplate the allowance of compensation for damages resulting from negli-gence.

APPEAL from the circuit court, Sunflower county.
HON. S. F. DAVIS, Judge.

Action by C. B. Stephens against the Beaver Dam Drainage District. From a judgment sustaining a de-murrer, plaintiff appeals. Affirmed.

*H. C. Mounger,* for appellant.

The sum and substance of counsel's argument seems to be that because it was decided in the case of *Nugent v Levee Board,* that no damages could be recovered for overflowing land because the levee board had no authority to raise maney to pay damages, that in this instance the drainage district is exempt.

The court held that the levee board was a creature of the National Government and that persons included were forced in against their will. In this instance the drainage district is a voluntary organization established on the petition of the land-owners and, at every state of the proceeding persons have the right and opportunity to protest. This argument is fully answered by the case of *Bradbury* v. *Vandalia Drainage District,* 86 N. E. 163, 236 Ill., 36, 19 L. R. A. (N. S.), 991.

Section 17 of the Constitution is the supreme law of the land. The Nugent case was decided before the words "or damaged" were inserted in the Constitution of 1890, and this amendment enlarged the protection of that section very much.

This drainage district was organized long after that clause was added to the Constitution and in the full light of section 17, and the law establishing said district must be construed with reference to this provision of the Constitution. Nor did the act creating said district repeal said section 17 of the Constitution. The legislature did not so intend, nor could it have done so if it had so intended.

Under section 17 of the Constitution of 1890, it is beyond the power of the state, or any corporation, to take or damage the property of any person, even for a public use, without compensation being first made. As is said in the case of *Hill* v. *Woodward,* 100 Miss. 889, under section 17 of the Constitution of 1890 it is beyond the power of the state or any corporation to take or damage the property of

any person, even for a public use, without due compensation being first made.

In the case of *Williams* v. *Light & Railway Company*, 110 Miss. 193, the court by Chief Justice Smith said: Prior to 1890 our Constitution contained no provision that private property shall not be damaged for public use, except on due compensation being first made to the owner or owners thereof, so that, under the rule, that the general good must prevail over partial individual inconvenience. (*White* v. *Yazoo City*, 27 Miss. 357.) The owner of private property was without remedy for any damage inflicted upon it for the public good. This rule was reversed by section 17 of the Constitution of 1890 as was pointed out in *King* v. *Railway Co.*, 88 Miss. 456, 42 So. 204, 6 L. R. A. (N. S.) 1036, 117 Am. St. Rep. 749; and the right of the individual to the enjoyment of his property is now superior to that of the public to damage it for the general good. Formerly the public might use or authorize the use of its property in any manner constitent with the general good, without liability for any consequental damages resulting therefrom to the property of individuals; but now, while it may continue to use its property in any manner consistent with the general good, it must compensate the owner of private property for any damage thereby inflicted upon it. A municipality still has the right to permit the use of its streets by a street railway, but only upon payment of abutting property owners of any damage thereby inflicted upon them.

It may be said in passing that the Nugent case was decided before these words "or damaged" were inserted in the Constitution and it is now inconceivable that even a levee board could damage private property without making compensation. Indeed, in the case of *Richardson* v. *Levee Board,* 72 Miss. 533, it was held that the levee board was liable for daming up Black Bayou, which drained Richardson's property. The court saying, in that case: "That very same section of the Constitution of 1890 (Sec. 17) which

provides that due compensation shall first be made to the owner for private property taken for public use provides that it shall not be. damaged for public use without due compensation being first made." The due compensation is, by the Constitution, the supreme law of the land, imperatively required to be first made as well when property is damaged as when it is taken. It is settled by *Vicksburg* v. *Herman,* 72 Miss. 211, that the damages referred to in section 17 embraces all damages, direct or consequential, immediate or remote. The measure of the right secured by this section is thus defined and settled by this and previous cases in this state, and includes all private property taken and all private property damaged for public use. It is true that in the Richardson case this was done by condemnation proceedings, but the principle is the same, and the levee board was made to pay damages.

In the case of *King* v. *Railroad,* 88 Miss 486, the court says: "Constitution 1890 section 17, makes the right of the owner of private property superior to that of the public reversing the former rule that the individual might be made to suffer loss for the public. He may still be compelled to part with his property for public use, but only on full payment for it or any right in relation to it. Before the Constitution of 1890 it was held that a municipality might cut down a street to the injury of abuting owners, without any liability to them (*White* v. *Yazoo City,* 27 Miss. 357) and a river might be turned away from a plantation fronting on it without compensation to the owner (*Homochitto River Com'rs* v. *Withers,* 29 Miss. 21, (64 Am. Dec. 126) and damage could be done to the property from constructing a levee without any right of the owner to be indemnified (*Richardson* v. *Board of Levee Com'rs,* 68 Miss. 539, 9 So. 351). This was because of the rule that the right of the public was superior to that of the individual. The decisions of this court since the Constitution of 1890 give full effect to the just rule established by its seventeenth section, by maintaining the right of the owner

to be fully compensated for any loss of value sustained from any physicial injury to his property or disturbance of any right in relation to it, whereby its market value is diminished. *Railway Co.* v. *Bloom,* 71 Miss. 247, 15 So. 72; *City of Vicksburg* v. *Herman,* 72 Miss. 211, 16 So. 434; *Richardson* v. *Board of Levee Com'rs,* 77 Miss. 518, 26 So. 963; *Rainey* v. *Hinds County,* 78 Miss. 308, 28 So. 875; *City of Laurel* v. *Rowell,* 84 Miss. 435, 36 So. 543. Many decisions of the courts of other states, with constitutions like ours, are cited and discussed in Lewis' Eminent Domain, secs. 230-236.''

This provision of the Constitution embraces every sort of a corporation, towns, counties, municipalities and all others. No exception is made, nor could any exception be made, in favor of a drainage district. The present damage could not be reached by condemnation proceedings because the ditch has already been dug. Damages in condemnation proceedings can only be awarded for the proper construction of the ditch. *R. R. Co.* v. *Davis,* 73 Miss. 678.

An injunction cannot reach the case because the damage has already been done. Because a judgment might be difficult to collect is no reason for denying a remedy. No provision has been made generally in the charters of towns, or the organization of counties, for the collection of money to pay off damages. Yet, they both have been held liable in tort.

Counsel seems to think that section 17 of the Constitution only protects in case of condemnation proceedings. Yet, how mistaken is this view of the law as can be seen from the case of *Vicksburg* v. *Herman,* 72 Miss. 211; *Rainey* v. *Hinds County,* 79 Miss. 238; *R. R. Co.* v. *Lefoldt,* 87 Miss. 317, and the numerous other cases in tort cited under section 17 of the Constitution in Hemingway's Code, as well as in the case of *Covington County* v. *Watts,* cited in our original brief.

Counsel admits that we are without remedy, unless this is the remedy.

Here we have a drainage district, solely the creature of the legislature, that can set aside the Constitution and take and damage a man's property without any compensation. The law never intended any such thing and the legislature could not have accomplished such a result even if it had so intended. It might have a detrimental effect on the drainage district for a suit to be entertained against it, but a suit generally has a detrimental effect on the defendant. It might have a detrimental effect on the drainage district, but no further than the tort of the drainage district has had on the appellant's land. Here, according to the declaration, a large part of his land is overflowed and rendered worthless, which must be taken as true on demurrer. The probable effect of such a suit would have a tendency to make drainage districts more careful. Why should a drainage district be commissioned to destroy a man's land without compensation, a thing allowed to no other person or corporation.

The charge is made against the drainage district in its corporate capacity and the act charged is the act of the drainage district itself. We submit that in the light of the Constitution of the law and of reason and justice the demurrer should be overruled.

*Chapman & Johnson*, for appellee.

The appellee is a body politic and corporate and before proceeding with the discussion, it will be well to consider more particularly its nature. It is a drainage district organized under the provisions of chapter 195 of the Laws of Mississippi of 1912, as amended by chapter 269 of the Laws of Mississippi of 1914. From a perusal of the act under which the Beaver Dam Drainage District was organized it must be clear that it is a public corporation, organized for the purpose of draining and reclaiming wet, swampy and overflowed lands, and that the commissioners are a body politic and corporate having only the powers, duties and liabilities expressly conferred by the statutes,

among which is the power to have levied a tax, or special assessment, on the lands of the district, to pay the cost of the improvements contemplated, and after the system of drainage is completed, for the purpose of preserving such system, but having no power to levy, or to have levied, an assessment for the satisfaction of a judgment against it for tort. The case of *Nugent et al.* v. *Board of Mississippi Levee Commissioners,* 58 Miss. 197, cannot be distinguished from the instant case in any material particular. The board of Mississippi Levee Commissioners were made a body politic and corporate under the provisions of chapter 1 of the section Laws of 1865, and by that name could sue and be sued, and there were many powers conferred on them of marked similarity to the powers conferred on the drainage commissioners, and their duties were analogous to the duties of the drainage commissioners except that the levee commissioners were to build, repair and construct leveees, and the drainage commissioners, by the system of improvements contemplated in the statutes referred to, were to drain and reclaim wet, swampy and overflowed lands. The board of Mississippi Levee Commissioners was sued for carelessly, negligently, unscientifically and recklessly constructing a levee, which, by reason thereof, gave way, and plaintiff was damaged greatly by overflow. A demurrer was sustained to the declaration, on the ground that the defendant was not liable for the damages, and the judgment of the lower court was affirmed. The corporation was a public one, organized solely for the purpose of building, repairing and constructing levees, and was authorized to expend the funds derived from taxation only for that purpose. It had no stockholders, no property, and no rights enuring to it in its corporate capacity, and made no gains for its own members, its own benefit or the public. Levee commissioners and drainage commissioners are public officers, clothed with a corporate capacity solely for the convenience of administration. The court say in that case, and the same is true here, that if there were a recovery in this action, there could be no satisfaction of the judgment

except by a seizure of a fund devoted by law to another purpose, a fund raised by a mode of taxation allowed only for work of this character.

The appellant argues that a levee board is an entirely different body, legally speaking, from a board of drainage commissioners. But the court, in the Nugent case, do not agree with him. The court in deciding the Nugent case, quoted with approval the opinion of Justice Mellor in Coe v. *Wise*, 5 Best. & S. 440.

Counsel for appellant argues further, as a distinction, that the levee board was put in operation solely by the will of the legislature, but that a drainage district is volun· tarily organized by the landowners in it. As a matter of fact, under the statutes, a drainage district is not wholly a voluntary organization. A district may be organized on a petition of ten per cent of the owners of the real property within the proposed boundaries thereof. Section one of chapter 269 of the Laws of 1914 provides, (bottom of page 330) that the board shall meet and hear all property owners within the proposed drainage district who wish to appear and advocate or resist the establishment thereof, and if it deem it to the best interest of the owners of the real property within said district, and for the public benefit, that the same shall become a drainage district under the provisions of this act, it shall make an order upon its minutes, establishing the same as a drainage district. Section 2, page 332, provides that upon a petition signed by a majority of the landowners, owning one-third of the land or by one-third of the landowners, owning a majority of the land being presented, praying that the improvements be not made it will be so ordered. Thus it appears that the lands of a great many who do protest, and of minors who are unable to protest, may be included in the district, against the will of the owners, and taxes levied on them. The fact that it is established on the petition of a portion of the landowners does not change the character of the corporation from that of a public corporation to that of a private corporation. Whether the legislature form a cor-

poration for constructing a public improvement in a certain locality or enact a general law by which such a corporation may be formed in any locality on a petition of a portion of the property owners of the district, in either case devising a scheme of special taxation or assessment for raising funds for the purpose, the result is the same, a public corporation for accomplishing a certain end is created, and there can be no difference in principle in the liability of the two. The distinction attempted to be made by appellant is not sound. *Elmore* v. *Drainage Commissioners* (Ill.), 25 N. E. 1010; *Board of Improvement of Sewer District No. 2* v. *Moreland,* 94 Ark. 380, 127 S. W. 469, 21 Ann Case, 957; *Wood et al* v. *Drainage Dist. No. 2* (Ark. 1916), 161 S. W. 1057.

Regardless of the method in which a drainage district is established, that is, whether by the direct action of the legislature, incorporating a certain territory into a drainage district or by the act of the legislature providing a method whereby certain territory can be incorporated into a district on petition, it is, when the district is formed, a public corporation, to which is delegated certain powers and duties, and which can excercise those powers and perform those duties, and only those powers and duties delegated by the statute, and which incurs only the liabilty imposed upon it by the statute. The only power of this corporation is to, in pursuance of the terms of the statute, construct a system of drainage for reclaiming wet, swampy and overflowed lands, and under the statute, a tax or special assessment, can be levied for that purpose, and for that purpose only. If the funds raised by such assessment or tax could be diverted from the purpose for which they were raised, then the very object of the existence of the drainage district would be defeated, and the owners of the land in the district would soon find their lands confiscated for paying for the negligent and tortious acts of commissioners appointed by the board of supervisors. *Nugent* v. *Levee Commissioners, supra,* at page 220.

And so under the act in question, a tax based on the assessment of benefits to the land in the district can be levied for the purpose of constructing and maintaining the ditches and other improvements provided for in the act, and for carrying out the purposes and provisions of the act, and for paying for the work incident thereto, and in order to raise money therefor, bonds may be issued, and a tax levied to pay the bonds, and to the payment of the principal and interest of the bonds, and the entire revenues of the district may be pledged. The expression of the purpose of the tax excludes all other purposes.

Counsel for appellant, discussing section 17 of the Constitution, providing that private property shall not be taken or damaged for public use except on due compensation first being made to the owner thereof, says that since the case of *Nugent* v. *Board of Levee Commissioners,* was decided, the Constitution of 1890, has been adopted, and the word "damage" inserted therein; that prior to that time the Constitution provided only that property should not be taken for public use without due compensation. All of that is true, but neither the case of *Nugent* v. *Board of Levee Commissioners,* nor the case at bar turned on section 17 of the Constitution of 1890, or the like section of the Constitution of 1869, nor was either of said sections of the Constitution involved in either suit. But the question involved in that case, and the question involved here, was whether the board of commissioners was liable in tort for the negligent construction of its work. The rule announced in *Nugent* v. *Board of Levee Commissioners* was reaffirmed and reannounced after the adoption of the Constitution of 1890. See *Lowe et al.* v. *Board of Levee Commissioners,* 19 So. 346. There is no question in this case of taking or damaging land for public use, but only whether the district is liable in tort for the negligent construction and maintenance of its works. Section 17 of the Constitution is recognized by the act under which the district was organized. Section 7 of the act provides for a method of the assessment of benefits to the lands, and of the dam-

ages that will accrue to any landowner by reason of the proposed improvement, including all injury to lands taken or damaged, section 8, page 338, outlines the method by which the landowner is to have his damages assessed, unless he acquiesces in the assessment of the damages made by the commissioners, and this method is exclusive and sufficient. *Brown* v. *Beatty,* 34 Miss. 227; *Jones* v. *Belzoni Drainage District,* 102 Miss. 796, 59 So. 921.

The damages contemplated by section 17 of the Constitution are amply taken care of by the act. It is provided that unless the landowner, within thirty days after the assessment is filed, give notice that the demands assessment of damages by jury, he will be presumed to have accepted the assessment of damages by the commissioners, or to have acquiesced in their failure to assess damages in his favor. The damages contemplated by the Constitution would have been obtained by appellant in accordance with the terms of the act. The method is exclusive; he must have obtained in that way the damages contemplated by the Constitution. However, let us not be misunderstood. We say that the damages appellant is now seeking to recover are not the damages contemplated by the Constitution. If a taking of a part of the appellant's land and its use for the works of a drainage district necessarily resulted in damages to some of the remainder of his land, then under the Constitution such damage should be included in the assessment by the commissioners, under the act; but no account should be taken of the damages resulting thereafter from the improper or negligent construction or maintenance of the works of the district. *Newgass* v. *Ry. Co.,* 54 Ark. 140, 15 S. W. 188.

Such damages are not the damages contemplated by the Constitution; they, however, could be recovered in an action against certain corporations, but not against a drainage district, unless by special statutory authority. They are frequently allowed in condemnation proceedings, not because they are damaged within the meaning of the Constitution, but because where they can be recovered in

a subsequent proceeding, the law does not favor splitting causes of action.   See *Wood* v. *Drainage Dist.*, 161 S. W. 1059.

The Beaver Dam Drainage District was organized under the provisions of chapter 195 of the Laws of Mississippi of 1921, as amended by the Laws of 1914; that act, as we understand it, was taken by the legislature from an act of the legislature of the state of Arkansas, approved May 27, 1909 (Acts of 1909, page 829). Section 22, article 2, of the Constitution of the state of Arkansas is practically the same as section 17 of our state Constitution.   The supreme court of Arkansas, in the case of *Wood et al* v. *Drainage District No. 2 of Conway County et al.*, 161 S. W. 1057, herein above referred to decided on December 8, 1913, held that, under a state of facts most similar to those of the case at bar, the drainage district, which was organized under the act from which ours was copied, was not liable, relying, among other cases, on, and quoting with approval from, the opinion in *Nugent* v. *Board of Levee Commissioners*, 58 Miss. 197.   See, also, *Sels* v. *Green*, 88 Fed. 129; *Hensley* v. *Reclamation Dist.* 121 Cal. 96, 53 Pac. 401; *Board of Improvement of Sewer District No. 2* v. *Moreland* (*supra*).

The case chiefly relied on by appellant is *Bradbury* v. *Vandalie Levee & Drainage District*, 236 Ill. 36, 86, N. E. 163, 19 L. R. A. 991; 15 Ann. Case, 904.   In that case the drainage district constructed a levee along the Kaskaskia river so that at the time of the floods and freshets, when the river overflowed its banks, the waters of the river were caused to rise much higher on the West side, and to overflow the plaintiff's lands, which lay outside of the drainage district.   The construction of the levee was a part of the drainage scheme.   The question in the case was whether the plaintiff could sue for injury to his lands, lying outside of the drainage district, caused to be overflowed by reason of the levee, which formed a part of the drainage plan. The decision in this case is in conflict with the decision of our supreme court in *Indian Creek Drainage District No.*

1 v. *Garrott*, 85 So. 312. That part of it, commenting adversely on *Elmore* v. *Drainage Commissioners*, 135 Ill. 269, 25 N. E. 1010, and stating in substance, that the funds of the district could be diverted for the payment of damages caused by the negligent or tortious acts of the commissioners is not only *dictum*, but is also in conflict with the decisions of our supreme court in *Nugent* v. *Levee Commissioners*.

The Bradbury case was not based on any negligent act of the district. Besides, under section 2 of the act under which the defendant was organized, it was provided that the lands embraced in the drainage district shall be liable for any and all damages which may be sustained by any lands lying above such drainage district by the construction of any levee, ditch or drain, in such district. There is a special declaration of liability. This case is not in line with the decisions of our supreme court, and in addition is readily differentiated from the case at bar.

In the case of *Jones* v. *Sanitary District of Chicago* (Ill.), 97 N. E. 210, the act under which the district was organized provided that it should be liable for all damages to real estate which should be overflowed or otherwise damaged by reason of the construction, enlargement or use of the channel. Liability was expressly fastened by statute on the sanitary district for the doing of the very thing complained of in the suit. In Illinois, by statute, every sanitary district is liable for all damages to real estate within or without such district, which shall be overflowed or otherwise damaged by reason of the construction, enlargement or use of any channel, ditch, drain, outlet or other improvements, under the provisions of the act.

The case of *Nicholson* v. *Inlet Swamp Drainage District*, 117 N. E. 445, involved the question, not of liability *vel non*, but of whether the district was liable or the contractor. The court held that the district was liable on the ground that the work was done in accordance with the plans and specifications, and that the plans and specifications were defective in not making allowance for the

probability of the caving in of the banks of the ditch, and the deposit of silt and sand in the bottom during the progress of its construction. This is an Illinois case, and the statute of Illinois seem expressly to impose a liability in such cases on drainage districts.

It is our contention that the appellee in this case even under the facts in the case last cited, would not be liable, because as held in *Nugent* v. *Levee Commissioners,* and other cases hereinbefore cited for appellee, a drainage district is a public corporation, organized for a specific purpose, and can raise money by taxes for that purpose only and is not liable to respond in damages for the torts of its commissioners, and the funds of the district cannot be used in paying such damages. In the case at bar, however, it is not contended that the work was done in accordance with the plans and specifications, and that such plans and specifications were defective, but the contention is that the defendant negligently constructed and maintained one of its ditches. As stated by counsel for appellant in his brief; he alleges that the ditch which was intended to drain the water from the North to the South was so dug as to make the northern end lower than the southern, and to make the water flow backwards from South to North instead of from North to South as was the intention of the plan of the district.

The Mississippi cases relied on by appellant, in addition to certain levee board cases in regard to damages in eminent domain proceedings under the Laws of 1884, and cases holding that under certain circumstances a county can be sued, which was never denied, and none of which have any bearing on the issue here, are *Covington County* v. *Watts,* 82 So. 310, and *Rainey* v. *Hinds County,* 78 Miss. 308. In each of those cases the decisions was rendered against the county on the theory that the board had approved the plans and specifications that were so defective as to cause the injury complained of. That is not the case here, as the suit is not based on damages caused by the defective plans and specifications, but on the negligent act

of the commissioners in the construction of the work. But, as above stated, that is not the test by which liability of a drainage district is to be governed. We do not, for a minute, think that a drainage district is, as to liability, in the same category with a county, and our opinion is confirmed by the statutes and decisions. The county may hold property, levy taxes for various things, and perform other acts, and the purpose of its organization is broader and entirely different from that of a drainage district, which is a public corporation organized for the development of the country by much needed internal improvements; a drainage district can do only one thing, construct a drainage system and have levied an assessment on the lands therein for the purpose of paying for the system. There are conflicting decisions in the United States as to liability of a drainage district, or of a similar district, for the torts of the commissioners, but our state is aligned with the states holding non-liability for such torts. If a drainage district were held liable for the torts of its commissioners, the great purposes for which the district was organized would be defeated, and soon the people would cease to petition to have formed such districts in order to reclaim land that could not be put into cultivation except for such drainage districts, because the owners of the land would soon find that money raised from the assessment on the lands, instead of being used for paying for the improvements, would be dissipated in satisfying judgments for damages caused by the negligent and tortious acts of the commissioners; and the very land itself might ultimately be sacrificed for paying such damages. A drainage district is necessarily in the same class with a levee district, and the reasoning of that great jurist, General George in *Nugent* v. *Levee Commissioners, supra,* is unanswerable, and that case, which was followed in the Arkansas Drainage district cases of *Wood et al.* v. *Drainage District, supra,* must control the decision in this case. The appellant has cited no authorities, from states that have adopted the Mississippi policy, contrary to the rule here contended, for. The Illinois cases

on which he relies, admitting for the sake of the argument that they are in point, are contrary to the rule announced in Mississippi. The Illinois case of *Elmore* v. *Drainage Commissioners, supra,* is consonant with the rule in Mississippi, but in so far as the later Illinois cases depart from the rule laid down in that case, then they are in conflict with Mississippi and the states holding as Mississippi does in regard to the liability of levee and drainage districts.

Appellant argues that unless he is allowed to recover in this action he is without a remedy. Suppose he is. If under the law, the district is not liable, most assuredly the court will not, to please appellant, make a remedy for him, arbitrarily create a liability against the district, and for his benefit impose a burden, never contemplated by them, on the hundreds of other landowners in the district, it is not responsible. However, in our opinion appellants has or did have a remedy but it is not against the drainage district by a suit in tort for damages. The court is not asked, in affirming this case, to repeal section 17 of the Constitution, nor any statute, nor will an affirmation work that result. The constitutional rights of appellant have been well looked after, and moreover, it is clear that no constitutional rights of appellant are involved in this suit.

SMITH, C. J., delivered the opinion of the court.

This is an appeal from a judgment sustaining a demurrer to a declaration in an action of tort instituted in the court below by the appellant against the appellee, a drainage district organized and governed by the provisions of chapter 195, Laws of 1912, as amended by chapter 269, Laws of 1914, to recover damages alleged to have been sustained by him because of the appellee's negligence in so digging one of its ditches as to cause the water to run the wrong way and to collect and pond on the appellant's land.

It does not appear from the declaration whether the negligence complained of was that of the drainage com-

missioners or of the persons by whom the ditch in question was actually dug; but that fact is not material, for the reason that, in the absence of a valid statute imposing liability therefor, a public corporation created *in invitum* for the purpose of discharging a public function is not liable for the negligence of its officers, agents, or employees. *Brabham* v. *Board of Supervisors*, 54 Miss. 363, 28 Am. Rep. 352; *Nugent* v. *Board of Levee Commissioners*, 58 Miss. 197. It is true that drainage districts can be organized under the statute here in question only on the petition of a certain per cent. of the landowners; nevertheless they are involuntary corporations for the reason that they can be organized, not only without the consent of all of the landowners therein, but over the actual protest of a part of them.

The provision of section 17 of our state Constitution that "private property shall not be . . . damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law," so greatly relied on by counsel for the appellant, changed the rule which existed prior to its adoption that a landowner was without remedy for any damage inflicted on his land for the public good (*King* v. *Railway Co.*, 88 Miss. 456, 42 So. 204, 6 L. R. A. [N. S.] 1036, 117 Am. St. Rep. 749; *Williams* v. *Light & Railway Co.*, 110 Miss. 174, 69 So. 596), but has no bearing on the liability *vel non* of a corporation for the unauthorized acts of its officers and agents, which liability must still be determined by the rules of the common law as modified by statute. This section of the Constitution was complied with by the legislature in enacting the statute here in question by the provision therein for the assessment and payment of "all damages that will accrue to any landowner by reason of the proposed improvement," which provision does not contemplate the allowance of compensation of damages resulting from negligence, but for such only as will result from the proper construction of the proposed

improvement. *Wood* v. *Drainage District,* 110 Ark. 416, 161 S. W. 1057. The cases cited by counsel for the appellant wherein this court has held a county liable for the acts of its board of supervisors are not here in point, for the reason that in each of them the decision was based on liability.

*Affirmed.*