STATE HIGHWAY COMMISSION *v.* MCCLENDON, et al.

Division A.   June 11, 1951.

No. 37982 (53 So. (2d) 35)

John **Kuykendall, Jr.** and **Matthew Harper, Jr.**, Assistant Attorneys General, and **E. R. Holmes, Jr.**, for appellant.

**Higgins & Quinn**, for appellees.

**Kyle, J.**

This case was before this Court on appeal from the chancery court of Hinds County in 1949, and was reversed by this Court and remanded for the purpose of having the lower court determine the remaining issues involved after a settlement by the complainants with the defendants of the claim for injunctive relief. The opinion on the former appeal is reported in the case of McClendon v. Mississippi State Highway Commission, 205 Miss. 71, 38 So. (2d) 325.

The complainants, H. T. McClendon and others, filed their bill of complaint against the defendant, the Missis-

sippi State Highway Commission, on April 10, 1946, asking for a mandatory injunction to abate a so-called water nuisance alleged to have been created by the defendant in the construction of U. S. Highway No. 49 running southwardly from the City of Jackson toward the City of Hattiesburg, and to recover damages alleged to have been sustained by the complainants as a result of the diversion of surface waters from their natural flow into an artificial ditch constructed by the defendant and running through the lands owned by some of the complainants and in close proximity to the lands of the other complainants in Sections 35 and 36, Township 5 North, Range 1 East, in Rankin County, lying immediately adjacent to or in close proximity to U. S. Highway No. 49.

The complainants in their bill of complaint alleged that the highway was completed sometime during the year 1932; that for the purpose of controlling the surface waters flowing westwardly across the defendant's right-of-way it became necessary in 1935 for the defendant to enlarge and straighten the channel of Squirrel Branch by the construction of a small artificial ditch across the lands of some of the complainants and in close proximity to the lands of the other complainants; that the defendant procured the necessary easements from the landowners and immediately thereafter constructed said ditch, which was approximately one and one-half miles in length.

The complainants further alleged in their bill that in 1940 the ditch was enlarged for the purpose of controlling more effectively the surface waters and keeping the surface waters from flooding the highway and the lands lying immediately East of the highway; that in the course of time after the enlargement of said ditch the constant flow of surface waters into the ditch caused an increase in the width and depth of the ditch at its upper reaches and a filling in of the ditch in its lower section, and that as a result thereof the lands of the complainants had become subject to complete inundation after ordinary rainfalls, and that said lands had been rendered unfit for farming

purposes; and that the complainants had been unable to cultivate crops on said lands since the year 1943.

The complainants further alleged that the action of the defendant in the construction of the above mentioned artificial ditch and in failing to keep the same properly dredged and cleared so as to facilitate the flow of water through said ditch and into its natural drain, had resulted in the inundation of complainants' land, and constituted a taking or damaging of complainants' private property for public use without due compensation therefor.

The complainants in their bill asked that the court require the defendant to abate the water nuisance complained of by dredging, clearing and deepening the artificial channel at its lower reaches and by doing all other things necessary to facilitate the flow of the surface waters into the natural drains, or that the defendant be required to construct such other ditches as might be needed to prevent the flow of the surface waters over and on the lands of the complainants, and that the defendant be permanently enjoined to keep said ditches open and free from obstructions; and the complainants asked that they be awarded damages for the injuries complained of.

The complainants attached to their bill of complaint itemized statements of the crop damages and other damages alleged to have been sustained by each of them during the years 1943, 1944 and 1945. These damages included damages to their truck gardens, gravel driveways, cost of replanting corn and field peas, damage to pasture land caused by the overflow of water, and loss of chickens and calves caused by drowning, during each of the above mentioned years.

The defendant filed an answer and a demurrer to the bill of complaint, and also special pleas in bar of the relief prayed for. In its answer the defendant interposed as a special plea in bar of the suit a release obtained from the landowners in 1940 which will be hereinafter

referred to. The defendant denied that the damages alleged to have been sustained by the complainants were due in any manner to the act of the defendant, and the defendant denied that there was any duty resting upon the State Highway Commission to dredge or clean out the artificial ditch referred to in the bill of complaint, and the defendant specifically denied that the damages alleged to have been sustained by the complainant were proximately caused by the diversion of surface waters into the drainage ditch. The defendant also interposed a plea of the ten year statute of limitations.

The defendant filed with its answer copies of drainage easements in which the land owners through whose land the artificial ditch was constructed conveyed to the State Highway Commission easements authorizing the construction of the ditch.

The defendant also filed as an exhibit to its answer a copy of a formal release dated January 9, 1940, signed by H. L. Lowe and others, which recited that in consideration of the sum of $1100 the grantors ''release and relinquish any and all claims, demands or rights of action accrued, accruing or to accrue against the State Highway Commission of Mississippi for or on account of damages which have arisen or which may arise out of that certain channel change made by the State Highway Commission on the East side of Highway 49 in Rankin County, Mississippi, and running through, over, on, across or near the land belonging to the undersigned'', and particularly damages alleged to have been sustained by the grantors in certain suits filed by them in the circuit court of Rankin County a short time prior to the date of the execution of said release; and copies of the declarations filed in the above mentioned suits in the circuit court of Rankin County, were attached to the defendant's answer.

The above mentioned release dated January 9, 1940, was signed by E. E. Turner and wife, H. L. Lowe and wife, and J. W. Quinn and wife, who are complainants in this suit, and also by T. H. Moody and wife, who, on

June 24, 1942, conveyed a part of the tract of land which they owned to J. D. McClendon and wife, complainants herein, and who, on September 4, 1943, conveyed a part of the tract of land which they owned to H. T. McClendon and wife, complainants herein.

The artificial ditch referred to in the bill of complaint ran through and across the lands owned by the above named E. E. Turner and wife, H. L. Lowe and wife, J. W. Quinn and wife, and by T. H. Moody and wife, at the time of the execution of the above mentioned release. The ditch did not run through or across any of the lands owner by the above named R. L. Quinn and wife, Crimes Austin and wife, M. R. Butler and wife, Otho Griffin and wife, and Hayward Walker and wife.

After the filing of the bill of complaint the question as to injunctive relief was settled by agreement of the parties which was filed with the papers in this cause on May 28, 1946. Under the terms of the agreement the State Highway Commission agreed to clean out the ditch and extend the same a short distance on the west side of the highway. But it was expressly stipulated in the agreement that the Highway Commission, by agreeing to clean out the ditch in question and to extend the ditch on the west side of the highway, did not admit any liability for damages to any of the complainants.

The cause came on for hearing before the chancellor on June 24, 1947, upon an agreed stipulation that the court should hear only two legal propositions at that time, first, the question of the validity of the release executed by some of the complainants on January 9, 1940, which was pleaded in bar of the suit, and second, the question of the rights of the other complainants who had purchased after the original construction of the ditch and the subsequent cleaning out of the ditch in 1940. At the conclusion of the hearing the chancellor held that the release executed by the complainants hereinabove named on January 9, 1940, constituted a full and final settlement of all claims for damages arising out of the construction

of the above mentioned artificial ditch, as to the land-owners who executed the release and the parties who had later purchased lands from them. The chancellor also held that after the question of injunctive relief had been eliminated by agreement of the parties, the remaining issues presented involved claims for damages for breach of contract for failure to keep the ditch open or to make other improvements, and that such claims for damages should be prosecuted in a court of law, and that the chancery court had no jurisdiction to try such suits for damages. The chancellor therefore entered a decree dismissing the suit without prejudice at the cost of the complainants, and the complainants appealed the case to this Court.

This Court on January 24, 1949, reversed the decree of the chancellor and remanded the cause for trial on the question relating to the claims for damages. See McClendon v. Mississippi State Highway Commission, supra. The Court on that appeal held that the chancery court had jurisdiction under the original bill to dispose of all issues involved, and that the fact that the parties had come to an agreement as to the matters calling for injunctive relief was not sufficient to deprive the court of jurisdiction in the matter of the claims for damages.

After the mandate of this Court had been filed in the lower court, the cause was again submitted to the chancellor on bill, answer and exhibits and an agreed statement of facts, and on briefs filed by the attorneys for the respective parties; and the chancellor, after considering the same, held that the inference to be drawn from the opinion of this Court rendered on the former appeal was that the case had been reversed and remanded for the purpose only of having the chancellor ascertain the extent of the damages sustained by the parties and enter a decree therefor. And the chancellor thereupon entered a decree under a stipulation awarding damages to the complainants, respectively, for fifty per cent of the amounts sued for.

The appellant, in its assignments of errors and in its brief, contends that the lower court erred in holding that this Court, when it reversed and remanded the case on the former appeal, intended to remand the case for the assessment of damages only, and that the lower court erred in awarding damages to the complainants under the facts alleged in the pleadings and shown by the record.

In the opinion rendered by this Court on the former appeal this Court did not undertake to decide any of the questions relating to the claims for damages. This Court merely held that the lower court, after the claim for injunctive relief had been settled by agreement of the parties, should have retained jurisdiction of the cause for the purpose of hearing and determining those questions. The merits of the complainants' claims for damages were not considered by this Court on the former appeal. And the chancellor was in error in assuming that the case had been remanded to him only for the assessment of damages. The chancellor, however, has awarded damages to the complainants, and the case is now before us again for review on the questions presented in connection with the complainants' claims for damages.

These claims for damages fall into three groups, as follows: (1) The claims presented by the complainants who executed the release dated January 9, 1940; (2) the claims presented by the complainants who after the date of the above mentioned release purchased lands from the other landowners who had signed the release; and (3) the claims presented by the complainants whose lands were not involved in the release.

The first group includes the claims of E. E. Turner and wife, H. L. Lowe and wife, and J. W. Quinn and wife, all of whom signed the release dated January 9, 1940. These parties were landowners who had conveyed to the State Highway Department proper easements over and across their lands for the construction of the ditch in 1936. Some of them had later filed suits

against the State Highway Commission for damages alleged to have been sustained by them on account of the construction of the ditch and the flooding of their lands. They had thereafter effected a complete settlement with the State Highway Commission of their claims for damages and had been paid for the damages resulting to their lands from the construction of the ditch; and they had, by formal release, duly executed by them, released and relinquished any and all claims, demands and rights of action accrued, accruing or to accrue against the State Highway Commission arising out of the above mentioned channel change, and particularly any damages alleged to have been sustained by them in the suits theretofore filed by them in the circuit court of Rankin County. That settlement constituted an accord and satisfaction, and the parties who signed the release were clearly bound by the release, and the plea in bar of their claims should have been sustained.

The second group of claims includes the claims of H. T. McClendon and wife and J. D. McClendon and wife, who purchased their lands in 1942 and 1943 from T. H. Moody. Moody had signed the release dated January 9, 1940. The McClendons had purchased their lands six or seven years after the ditch had been constructed. When they purchased their lands from Moody they had full knowledge of the location of the drainage ditch and the other drainage facilities, and they purchased the lands as they found them and in the condition they were in at the time of their purchases. Masonite Corporation v. Burnham, 164 Miss. 840, 146 So. 292, 91 A. L. R. 752; Henritzy v. Harrison County, 180 Miss. 675, 178 So. 322. Compensation for the damages to the lands resulting from the construction of the ditch had been paid to the former owners, and a proper release had been executed by the former owners in 1940. No further liability existed for the payment of additional compensation to the new owners on account of the construction of the ditch or the damages resulting therefrom.

The release dated January 9, 1940, constitutes a complete bar to the claims for damages filed by the above named complainants without reference to the rule laid down by this Court in the case of State Highway Commission v. Knight, 170 Miss. 60, 154 So. 263. But in the Knight case, which was a case involving a claim against the State Highway Commission for damages to the plaintiff's land alleged to have been sustained as a result of the construction of ditches by the State Highway Commission, which changed the channel of the creek and thereby caused water to overflow the plaintiff's land, the Court held that the State Highway Commission was not liable for damages caused by the negligent acts of its officers and agents, or for their negligent failure to discharge a duty imposed on the commission by law, or for their doing of unauthorized acts or their negligent doing of authorized acts. In that case the Court said:

"The evidence discloses that the ditches were dug as and where directed by the highway commissioners, and that the inundation of the appellee's land could have been prevented by putting a 'bulkhead and spillway' in the ditch which deflected the flow of the water in Barlow creek.

"Several questions are presented by the record, but the one which lies at the threshold of the case is the liability, vel non, of the appellant for the construction of the drainage system in such manner as to cause the water of Barlow creek to inundate the appellee's land, or, to express it differently, whether the appellant is liable for the negligence of its officers and agents in so constructing this drainage system as to cause the water to overflow the appellee's land.

"In the absence of a statute so providing, a public corporation created in invitum and supported by taxation is not liable for damages caused by the negligent acts of its officers and agents; . . ."

After citing many authorities in support of the above mentioned rule, the Court further stated:

"Section 4998, chapter 122, Code 1930, under which the state highway commission operates, authorizes it to purchase land for highway purposes, to acquire it for such purposes in eminent domain proceedings, and to pay the owners the compensation and damages awarded in such proceedings, and provides that 'the authorities constructing such highway under the authority as is provided for in this section, shall use diligence to protect growing crops and pastures, and to prevent damage to any property not taken.' It is the failure of the highway commissioners to discharge this duty of which the appellee complains.

"A number of cases are cited by the appellee, but the only ones that could be here relevant are Rainey v. Hinds County, 78 Miss. 308, 28 So. 875, and Covington County v. Watts, 120 Miss. 428, 82 So. 309, in each of which a county was held liable for damages caused a landowner by the negligent construction of a county road. As said by this court in Stephens v. Beaver Dam Drainage District [123 Miss. 884, 86 So. 641], supra, these cases 'are not here in point, for the reason that in each of them the decision was based on a statute which in the opinion of the court imposed liability.' . . .

"It is true that section 5006, Code 1930, provides that the state highway commission shall be a body corporate, and may sue and be sued as such; nevertheless, a suit against it will lie only for liability imposed by a statute. State Highway Commission v. Gully, 167 Miss. 631, 145 So. 351. The effect here of section 17 of the Constitution was discussed, among other cases, in Stephens v. Beaver Dam Drainage District, supra."

██ In the case that we now have before us, as we have already stated, the ditch did not run through or across any of the lands owned by the complainants, R. L. Quinn and wife, Crimes Austin and wife, and M. R. Butler and wife. None of these landowners signed the release dated January 9, 1940, to which reference has been made above. If the lands owned by these complainants

were damaged by the laying out and construction of the new highway in 1932, or by the laying out and construction of the above mentioned artificial ditch in 1936, the owners of the lands at that time under Section 17 of the State Constitution would have been entitled to compensation for the damages resulting to their lands from the laying out and construction of the highway or from the laying out and construction of the ditch, provided suits were filed within the statutory period; and under the rule laid down in the cases of Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565, and Baker v. Mississippi State Highway Commission, 204 Miss. 166, 37 So. (2d) 169, the measure of the damages which they would have been entitled to recover would have been the difference between the fair market value of the property before and the fair market value after the laying out and construction of the highway or the ditch. But the claims filed by R. L. Quinn and wife, Crimes Austin and wife, and M. R. Butler and wife, do not represent claims for damages to their lands resulting from the laying out and construction of the highway in 1932 or from the laying out and construction of the ditch in 1936. Their claims, according to the itemized statements attached to the bill of complaint, are claims for damages for loss of truck garden patches in 1943, 1944 and 1945, and for the drowning of chickens in 1944, for the loss of corn crops on 10 acres of land in 1944 and 1945, and for the washing away of a gravel driveway and a wooden bridge in 1943, 1944 and 1945; and these damages resulted from the ditch being filled in with dirt, silt and debris in 1943 and from the failure to keep the ditch in a proper state of repair. For damages of that kind the State Highway Commission is not liable under the rule laid down in the Knight case.

For the reasons stated above, the decree of the lower court must be reversed and a decree will be entered here dismissing the bill of complaint.

Reversed and judgment rendered.