BROOM, Justice,
for the Court:
Eminent domain proceedings by Mississippi State Highway Commission (Commission) went to judgment in a Special Court of Covington County. Taken were .05 acre of land and a .01 acre drainage easement out of a 2.42 acre tract owned by Basil and Scotty Blackwell (appellees). From the $12,750 jury verdict and judgment, the Commission appeals. Chief issues relate to the trial court allowing appellees to (1) introduce evidence concerning loss of access to Highway 49, and (2) substantially raise their statement of values after jury selection was completed. We reverse and remand.
*1326 I.
DID THE APPELLEES’ INTRODUCTION OF EVIDENCE CONCERNING ALLEGED LOSS OF ACCESS TO HIGHWAY 49 CONSTITUTE REVERSIBLE ERROR? The land taken is situated on the east side of U.S. Highway 49 and on the south side of State Highway 590 where the two highways intersect near Seminary, Mississippi, forming “Seminary Junction.” Ap-pellees’ 2.42 acre tract was used as residential property when this action was filed. In 1958 the Commission (by deeds) obtained land from appellees’ predecessors in title for the purpose of four-laning Highway 49, and locating a sight flare at the intersection so that travelers would have better vision there. When the deeds were executed, there was a graveled driveway extending southwesterly from the south margin of Highway 590 (just east of the junction) across the subject property to the east margin of Highway 49. The Commission filed this action in 1974 and (using posts) barricaded the east margin of the flare which was purchased in 1958 from appellees’ predecessors. The barricade effectively cut off the appellees’ direct access into Highway 49, i. e., the graveled driveway, which they and their predecessors had previously used since prior to 1958 and until barricaded in 1974. At trial appellees successfully argued that the placement of these creosote posts cut off a long established access for which they should be compensated, and they were allowed to present such evidence to the jury. The Commission contends that: (1) Legal access to Highway 49 across the sight flare area, including that area on which the driveway is situated, ceased when the highway was four-laned in 1958; (2) appellees’ predecessors in title were duly compensated (by acceptance of the consideration for the two deeds) for that loss of access; and (3) after 1958 any vehicular access used by appellees to Highway 49 at the disputed area was illegal access at worst, or permissive access at best.
In 1958 appellees’ property was owned by two separate landowners — the south (largest) portion was owned by L. B. Shoemake, and the northernmost portion was owned by Ira Aultman. In the process of four-lan-ing Highway 49, the Commission purchased (by warranty deeds) from Shoemake and Aultman a strip of land east of Highway 49 alongside the paved portion, thereby creating the flare off of 49 at its junction with 590. Both deeds reflect a substantial, if not handsome, consideration. The Shoemake deed conveyed to the Highway Department .48 acre of the flare parcel for the sum of $6,960, which deed specified that $960 was for .48 acre of land and $6,000 was for all other damages related to the proposed highway construction. By the Ault-man deed to the Highway Department, 1.15 acres were conveyed for the sum of $18,500, but the deed did not specify the amount designated for land or for damages. Both deeds are printed Mississippi State Highway Department forms, and state:
It is further understood and agreed that the consideration herein named is in full payment and settlement of any and all claims or demands for damage accrued, accruing, or to accrue to the grantors herein, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed highway, change of grade, water damage, and/or any other damage, right or claim whatsoever.
In Muse v. Mississippi State Highway Comm’n, 233 Miss. 694, 103 So.2d 839 (1958), the Highway Department acquired title (in 1948) to 6.1 acres of land owned by Sam D. Morrison and others, Mrs. Muse’s predecessors in title, for the purpose of constructing a four-lane section of U.S. Highway 51 north of Jackson. The first two-lane section of the highway was completed in 1955, and in 1956 the Commission decided to construct two additional lanes as frontage or service roads. The service road project required condemnation of .61 acre of Mrs. Muse’s property along with rights of access. One of her contentions on appeal was that her right of access was additionally limited by the building of a median between the northbound two lanes and the southbound two lanes, impeding her free access to the entire highway. We held that any loss of *1327 access by the construction of the median was an inconvenience to the general public and an incident to the proper exercise of police powers, and hence no payment of compensation was due to Mrs. Muse. Muse further held that the right-of-way deed executed by Mrs. Muse’s predecessor in title
recited that the consideration paid to the grantors in that deed was paid in settlement of any and all claims or demands for damages “accrued, accruing or to accrue to the grantors, their heirs, assigns, or legal representatives, for or on account of the construction of the proposed highway, change of grade, water damage, or any other damage, right or claim whatsoever.” That receipt and release was binding upon the successors in title to the grantors therein. The record shows that work on the two west lanes of the four-lane highway was completed sometime during the year 1955. But the Commission still had a right to construct the two additional lanes when money was made available therefor; and no further liability existed for the payment of additional .compensation to the appellant for damages resulting from the construction of the four-lane highway . . . . State Highway Commission v. McClendon, 212 Miss. 18, 53 So.2d 35. (233 Miss, at 715-716, 103 So.2d at 848).
Here the evidence clearly shows that no permit for the driveway in controversy was ever applied for by Shoemake or his successors in title (appellees). However, Shoe-make testified that the Highway Department knew of the existence of the driveway and that the Highway Department contractor, after four-laning the highway, put the access drive back onto the Shoemake property. On cross examination appellee, Scotty Blackwell, affirmatively answered a question as to whether (when he purchased his property) he knew the Commission had purchased the disputed area from his predecessor (Aultman) “as a sight flare area.”
Two aspects of the instant case are noteworthy here. First, when the sight flare area was purchased from Shoemake and Aultman in 1958 by the Commission, the area became subject to Commissier control under police powers set forth by our statutes, including Mississippi Code Annotated § 65-1-19(d), (h) and (k) (1972). American Oil Co. v. Mississippi State Highway Comm’n, 244 Miss. 821, 146 So.2d 355 (1962). Secondly, under those police powers the Commission already had promulgated its “Mississippi State Highway Department Maintenance Manual” Chapter XI § 1 C (3d ed., Jan. 1954), which provided:
(9) — Corner Sight Areas
At intersections where sight distance or clear vision areas have been obtained no driveway shall be permitted to cross this area. .
Of course, by statutory and case law, abutting landowners are entitled to compensation for loss of direct access. Here, not only did Shoemake and Aultman by their 1958 deeds convey away all their surface rights to the land conveyed, but the deeds executed by them recited that the consideration paid (not nominal in amount) was in settlement of “all" damages, claims and demands “for damage accruing, or to accrue . for or on account of the construction of the proposed highway and/or any other damage, right or claim whatsoever.” (Emphasis added). This clause, upon the facts of the record before us, under Muse, supra, precludes appellees as successors in title from asserting any damages which may have accrued from the 1958 project, including loss of access. The fact that appellees continued using the driveway to Highway 49 without a permit, which use for a time was “winked at” and not restricted by the department, implies nothing more than a permissive way, which could in no way ripen into a right of access. Permissive use of such driveway across Highway Department property would be subject to termination by the Highway Department without additional compensation under the police power. Muse, supra, held further that:
Land condemned for highway purposes without limitation as to surface use is at all times under the control of the highway authorities, which may make such use of the land as may be required; and *1328 the abutting landowner’s right of access and user are subject to the right of the state under the police power to regulate and control the traffic on the highway in the interest of safety, and to restrict in a reasonable manner entrances from abutting property. (233 Miss, at 714, 103 So.2d at 847).
Here, the land acquired from Shoemake and Aultman was by warranty deeds rather than having been “condemned” as in Muse, but the Commission gained the same right to control the land as if it had “condemned” the property. This is especially true where, as here, neither the Shoemake or Aultman deed contained any exception, limitation, or reservation as to surface use.
The deeds (which were duly recorded and became notice to everyone) from appellees’ predecessors in title to the Commission in 1958 made reference to the plans and specifications of the Proposed Highway 49. Ap-pellee Scotty Blackwell knew of the sight flare area purchased by the Commission. The likelihood that subsequently a barricade (or other means) would be used by the highway authorities to keep persons from driving vehicles from abutting property into the flare area “was foreshadowed” by plans and specifications referred to in the 1958 deeds to the Commission. Mississippi State Highway Comm’n v. Tomlinson, 223 Miss. 623, 78 So.2d 797 (1955). Recently we held in Jackson Municipal Airport Authority v. Wright, 344 So.2d 471 (Miss.1977), that a landowner must recover in “one proceeding all damages that have resulted or which are reasonably likely to result in the future by virtue of the easement being used for the purpose for which it was granted.” (344 So.2d at 473). Here it is clear and beyond any reasonable doubt that that payment by the Commission for the lands it acquired by warranty deeds from Shoemake and Aultman was for “all” surface rights the grantors and their successors had to the lands conveyed, including the right to drive vehicles across the lands. The deeds were equivalent to a “proceeding” and operated to release, as Muse, supra, held, the Commission from any and all claims for any reasonable use the Commission should later elect to make of the property. The “sight flare” here is not significantly different from the “median” (both are safety devices) in Muse, and to say that the Commission cannot exclude vehicular traffic from a “sight flare” would destroy the efficacy and safety aspects of such a valuable part of our highway systems.
The Commission makes the naked argument that the trial judge erred in excluding from evidence the Highway Department’s “Standard Operating Procedures” (SOPs) designated Exhibit 2. Apparently the SOPs were excluded because they were, as shown on “their face,” adopted some ten years after execution of the Shoemake and Ault-man deeds to the Commission. Absent any cited authority on this point, we will not rule that the court below committed reversible error in excluding the SOPs which were not shown to have been promulgated before execution of the two deeds. However, there was introduced below, without argument here, the Highway Department Maintenance Manual (Exhibit P-5) which, in § 1 C(9), supra, at page 189 thereof, prohibits driveways such as presented here to cross “sight distance or clear vision areas.” This admitted document (effective before the Aultman and Shoemake deeds) in § 1 C(9) thereof appears to contain the same prohibitory substance as the excluded SOPs.
Mississippi State Highway Comm’n v. Null, 210 So.2d 661 (Miss.1968), is relied upon by the appellees who say it overruled Muse, supra, but we point out that Null is factually not analogous to Muse, nor does it overrule Muse. On the proposition of whether an easement may be prescriptively acquired by landowners as against the sovereign, the general law rejects such a proposition. We hold that it was reversible error to allow appellees to introduce evidence concerning loss of access to Highway 49, and at retrial such evidence will be excluded. Should we rule otherwise would require that the Commission now buy again what it bought and paid for when it obtained the 1958 deeds. The taking here does not leave appellees’ property locked in com *1329 pletely — there will be available to them easy access to Highway 590 by means of a fifty foot ramp.
II.
PERMITTING APPELLEES TO RAISE THEIR STATEMENT OF VALUES DID NOT CONSTITUTE REVERSIBLE ERROR. Mississippi Code Annotated § 11-27-7 (1972), provides that statements of values as part of the pleadings are to be treated as such. Another of our statutes on civil procedure (§ 11-7-117) empowers courts to allow amendments. We hold that raising the statement of values in this cause, where the Commission did not request a continuance or delay, was not reversible error. Mississippi State Highway Comm’n v. Amos, 319 So.2d 231 (Miss.1975); Coleman v. Mississippi State Highway Comm'n, 289 So.2d 918 (Miss.1974).
III.
The question of excessiveness of the jury verdict need not be discussed because retrial of the case will be required. At retrial the appellees will be permitted to have benefit of new appraisals of the property not including loss of access as an element of damages. Final argument made by the Commission relates to the granting and refusal of jury instructions which contained language on the disputed issue of compensation for loss by appellees of their rights of access to Highway 49. Pertaining to this aspect of the case, we have held many times that the before and after rule “swallows and absorbs” all of the damages; that the rule is the ultimate measure of damages and instructions to the jury should not comment upon any particular element of damages. Mississippi State Highway Comm’n v. Crooks, 282 So.2d 232 (Miss.1973); Mississippi State Highway Comm’n v. Hall, 252 Miss. 863, 174 So.2d 488 (1965); White v. Mississippi Power Co., 252 Miss. 97, 171 So.2d 312 (1965). Accordingly, jury instructions at retrial will make no reference to compensation for loss of rights of access.
REVERSED AND REMANDED.
PATTERSON, C. J., INZER and SMITH, P. JJ., and ROBERTSON, SUGG, WALKER, LEE and BOWLING, JJ., concur.