Teresa **FROMME**

v.

**The UNITED STATES and VICTORIA COUNTY NAVIGATION DISTRICT, Third-Party Defendant.**

**No. 372-67.**

United States Court of Claims.

July 16, 1969.

Roger C. Butler, Corpus Christie, Tex., attorney of record, for plaintiff.

Howard O. Sigmond, Washington, D. C., with whom was Asst. Atty. Gen., Shiro Kashiwa, for defendant.

Conde N. Anderson, Victoria, Tex., for third-party defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, and SKELTON, Judges.

## OPINION

### PER CURIAM:

This case was referred to Trial Commissioner Mastin G. White with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Rule 57 (a). The commissioner has done so in an opinion and report filed on April 24, 1969. Plaintiff has filed no exceptions to or brief on this report and the time for so filing pursuant to the rules of the court has expired. Defendant filed a notice of intention to except to the commissioner's report, reserving the right to withdraw the notice if plaintiff failed to file exceptions within the time permitted under Rule 59. On June 4, 1969, defendant filed a motion to withdraw its notice of intention to except and its request that the court adopt the commissioner's report and recommended conclusion of law as its judgment. On June 6, 1969 the third party filed a motion that the court adopt the commissioner's findings of fact and conclusion of law as its judgment in the case. Since the court agrees with the commissioner's opinion, findings and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. Therefore, plaintiff is not entitled to recover and the petition is dismissed.

### OPINION OF COMMISSIONER

WHITE, Commissioner:

The plaintiff is suing in this case for just compensation under the Constitution because of the alleged taking by the defendant of a flowage easement over approximately 478 acres of land owned by the plaintiff in Victoria County, Texas.

The defendant asserts a contingent claim against the third-party defendant, Victoria County Navigation District.

It is my opinion that the evidence in the record fails to show a taking by the defendant of a permanent interest in the plaintiff's land, and, therefore,

that the plaintiff is not entitled to recover in the present action.[1]

The plaintiff is the owner of approximately 812 acres of land in Victoria County, Texas. The land is situated about 7 miles south of the City of Victoria and in the vicinity of the Guadalupe River. It is in the form of a comparatively narrow strip running from west to east. The strip is bounded on the west by the east bank of the Guadalupe River, and the strip then runs eastward across the flood plain of the Guadalupe River to and into an upland area that lies east of the flood plain. Approximately 478 acres of the plaintiff's land are situated in the flood plain of the Guadalupe River, and approximately 334 acres consist of upland and lie east of the flood plain. The surface elevation of the 478 acres which are situated within the flood plain varies from about 25 feet to about 31 feet above mean sea level.

The plaintiff alleges in the petition that the defendant, by constructing the Victoria Channel of the Gulf Intracoastal Waterway, with an appurtenant levee, has caused the floodwaters of the Guadalupe River and its tributaries to back upon the 478 acres of her land lying in the flood plain, to the extent that she has been deprived of the use thereof; and, therefore, that the defendant has taken a flowage easement over such 478-acre area.

The flood plain of the Guadalupe River south of Victoria, Texas, including the portion which contains 478 acres of the plaintiff's land, has always been subject to occasional flooding. The floods are caused by heavy rainfall in the area drained by the Guadalupe River and its tributaries, causing the river to overflow its eastern bank in the area south of Victoria and the floodwaters to flow eastward and southward across the flood plain. Flood waters invade the plaintiff's land from a northerly direction, and the runoff is in a southerly direction.

In the summer of 1967, the defendant (acting through the Corps of Engineers, Department of the Army) completed the construction of the Victoria Channel of the Gulf Intracoastal Waterway, with an appurtenant levee. The Victoria Channel provides shallow-draft navigation from the main channel of the Gulf Intracoastal Waterway to the vicinity of Victoria, Texas. It connects with the main channel of the Gulf Intracoastal Waterway at a point in San Antonio Bay, which is one of the larger bays along the Texas Gulf Coast, and then runs in a northwesterly direction through San Antonio Bay, along the eastern edge of Guadalupe Bay (an arm of San Antonio Bay), along the eastern edge of Mission Lake (an arm of Guadalupe Bay), and then overland to a turning basin located about 7 miles south of Victoria. The total length of the Victoria Channel is about 35.2 miles. The overland segment of the channel runs along the eastern rim of the flood plain of the Guadalupe River.

The Victoria Channel and the turning basin at its northern terminus are protected from the floodwaters of the Guadalupe River by a levee. The levee originates at the high ground northeast of the turning basin, proceeds westward along the north end of the turning basin, and then runs southward alongside and to the west of the channel. The levee is constructed to an elevation of 40 feet above mean sea level, or approximately 15 feet above the surface of the ground, in the vicinity of the turning basin.

The turning basin at the northern terminus of the Victoria Channel is located just to the south of the southern boundary of the plaintiff's land.

The evidence in the record shows that, contrary to the allegations in the petition, the works constructed by the defendant have not caused, and will not in the future cause, the floodwaters of the

---

1. The question of whether the defendant may be liable in tort for temporary damage done to the plaintiff's land has not been considered, as this court does not have jurisdiction under 28 U.S.C. § 1491 to adjudicate such a claim.

Guadalupe River and its tributaries to back upon the 478-acre portion of the plaintiff's land situated within the flood plain of the Guadalupe River.

On the other hand, there is evidence in the record regarding interference by the defendant's works with the runoff toward the south of floodwaters from the plaintiff's land in the flood plain.

The flood plain of the Guadalupe River narrows substantially in the area to the south of the plaintiff's land. During a period beginning in 1965, the defendant's activities incident to the construction of the Victoria Channel and appurtenant levee resulted in the maintenance by the defendant of a temporary spoil bank within the comparatively narrow portion of the flood plain just mentioned. Floodwaters from the Guadalupe River invaded the flood plain to the north of this slot, including the plaintiff's land in the flood plain, on several occasions during the construction period previously mentioned. The temporary spoil bank and the partially complete levee for the protection of the Victoria Channel impeded the runoff of the floodwaters from the plaintiff's land through the slot and caused such land to remain under water for a substantially longer time than would have been the case if the spoil bank and the partially completed levee had not been in existence.

The spoil bank mentioned in the preceding paragraph was removed as of the time of the completion of the Victoria Channel and protective levee in the summer of 1967, and it no longer affected the runoff of floodwaters from the plaintiff's land. However, the evidence indicates that the permanent levee protecting the Victoria Channel and turning basin impedes the runoff of floodwaters from the plaintiff's land toward the south whenever the floodwaters reach an elevation higher than 29 feet above mean sea level. In this connection, it appears that a flood at an elevation higher than 29 feet above mean sea level can reasonably be expected about once in every 15 years, on the average, in the portion of the Guadalupe River's

flood plain with which we are concerned. Such a condition occurred in September 1967, after the completion of the Victoria Channel and protective levee, as a result of the extraordinarily heavy rainfall which accompanied the sweep of Hurricane Beulah across the Texas Gulf Coast. At that time, the Victoria Channel and appurtenant levee interfered with the runoff of the floodwaters from the plaintiff's land in the flood plain and caused the floodwaters to remain on the plaintiff's land for a substantially longer period than would have been the case if the Victoria Channel and appurtenant levee had not been in existence.

Hurricane Beulah was followed in the Victoria area by a period of unusually heavy rainfall during the remainder of 1967 and during the first half of 1968. For example, 36 inches of rain fell during the first half of 1968, whereas the normal mean annual rainfall in the area is only 35 inches. Floodwaters from the Guadalupe River invaded the flood plain south of Victoria, including the plaintiff's land in the flood plain, on several occasions during 1968. The evidence in the record warrants the inference that none of the 1968 floods reached an elevation higher than 29 feet above mean sea level, and, accordingly, that the runoff of such floodwaters from the plaintiff's land was not impeded by the Victoria Channel and appurtenant levee.

As a result of the floodings and the unusually heavy rainfall during the period 1965–68, the plaintiff's land in the flood plain of the Guadalupe River was kept wet for several years. Much of the land was boggy at the time of the trial in August 1968, the grass cover had largely been killed, the land was covered with weeds, and it was not suitable for the grazing of cattle or other agricultural purposes. In this connection, it should be mentioned that the plaintiff's 478 acres in the flood plain of the Guadalupe River had been used for the growing of crops and the grazing of cattle during the period 1930–42, and for the grazing of cattle during the period 1942–65, despite the occasional floodings.

The boggy and weedy condition of the plaintiff's land in the flood plain of the Guadalupe River at the time of the trial was partially due (the extent cannot be determined on the basis of the evidence in the record) to the interference with the runoff of floodwaters from the plaintiff's land, which was caused during the construction period begining in 1965 by the defendant's temporary spoil bank and partially completed levee in the slot south of the plaintiff's land, and which was caused during the September 1967 flood period by the defendant's permanent levee in the slot.[2] Such condition was also due in part to the cycle of unusually wet weather through which the Texas Gulf Coast had been passing and to floods at or below the 29-foot level after September 1967, where there was no interference by the defendant's works with the runoff of floodwaters from the plaintiff's land.

It should be mentioned in this connection that the boggy and weedy condition of the plaintiff's land in the flood plain of the Guadalupe River is not a permanent condition. It can reasonably be expected that such condition will disappear, and that a grass cover on the land will develop again, within 2 or 3 years after the return of the normal weather cycle.

■ Court decisions through the years have clearly established the rule that where the Government constructs works upon land owned or controlled by it and thereby causes the land of another to be permanently flooded, there is a taking of the flooded land and the Government must pay just compensation for the land under the Constitution. Pumpelly v. Green Bay Co., 80 U.S. (13 Wall.) 166, 181, 20 L.Ed. 557 (1871);[3] United States v. Lynah, 188 U.S. 445, 468–470, 23 S.Ct. 349, 47 L.Ed. 539 (1903); United States v. Welch, 217 U.S. 333, 338, 30 S.Ct. 527, 54 L.Ed. 787

(1910). In this connection, it would seem to be immaterial whether works constructed by the Government cause the permanent flooding by backing water upon the affected land or by preventing water which originates elsewhere from draining off the affected land. See United States v. Kansas City Life Insurance Co., 339 U.S. 799, 810–811, 70 S.Ct. 885, 94 L.Ed. 1277 (1950).

■ In a situation where works constructed by the Government on land owned or controlled by it cause the land of another to be subject to intermittent, frequent, and inevitably recurring floodings—although not to constant flooding —it is held that the Government thereby takes a flowage easement over the affected land and must pay just compensation under the Constitution for the easement. United States v. Cress, 243 U.S. 316, 318, 328–329, 37 S.Ct. 380, 61 L.Ed. 746 (1917).

■ On the other hand, this court has said that one flooding (B Amusement Co. v. United States, 180 F.Supp. 386, 389, 148 Ct.Cl. 337, 341 (1960)) or two floodings (North Counties Hydro-Electric Co. v. United States, 151 F.Supp. 322, 323, 138 Ct.Cl. 380, 382 (1957), cert. den., 355 U.S. 882, 78 S.Ct. 149, 2 L.Ed.2d 112 (1957); National By-Products, Inc. v. United States, 405 F. 2d 1256, 1273–1275, 186 Ct.Cl. 546, 576–579 (1969)) of land attributable to the construction of nearby works by the Government cannot be regarded as a taking of a permanent interest in the affected land.

■ In the present case, the interference with the runoff of floodwaters from the plaintiff's land that was caused during the construction period beginning in 1965 by the defendant's temporary spoil bank and partially completed levee in the slot south of the plaintiff's land represented a temporary situation which ceased to exist upon the comple-

---

2. On the other hand, the Victoria Channel is very beneficial to the plaintiff in connection with the development of an extensive and valuable deposit of sand and gravel in her land.

3. This case involved a taking under the authority of a State, rather than a taking by the United States.

tion of the Victoria Channel and appurtenant levee in the summer of 1967. In this aspect of the case, there is lacking the element of inevitably recurring floodings which the Supreme Court stressed in holding that the Government had taken a flowage easement over the land involved in the *Cress* case, *supra*.

With respect to the interference with the runoff of floodwaters from the plaintiff's land which is to be expected from the permanent existence of the Victoria Channel and protective levee in the slot south of the plaintiff's land, it has been mentioned previously that such interference has occurred on one occasion since the completion of the channel and protective levee in the summer of 1967, and that it can reasonably be expected to recur at intervals of about once in every 15 years, on the average. Thus, this case lacks the future prospect of intermittent and frequent floodings which the Supreme Court mentioned in the *Cress* case.

Accordingly, it is my opinion that the evidence in the record fails to show a taking by the defendant of a flowage easement over the 478 acres, or any portion thereof, involved in the present case.

It necessarily follows that the petition should be dismissed.