Benjamin **PARADA**, and wife, Rosario Jurado De Parada, et al., Plaintiffs-Appellants,

v.

**UNITED STATES** of America, Defendant-Appellee.

No. 27464.

United States Court of Appeals Fifth Circuit.

Jan. 14, 1970.

William L. Merkin, Colbert N. Coldwell, El Paso, Tex., for appellants.

Ted Butler, U. S. Atty., R. Caballero, Jamie C. Boyd, Asst. U. S. Attys., El Paso, Tex., Romualdo Cesar Caballero, Trial Atty., U. S. Dept. of Justice, Tax Div., Criminal Section, Washington, D. C., for appellee.

Before GEWIN, THORNBERRY and AINSWORTH, Circuit Judges.

THORNBERRY, Circuit Judge:

This is an appeal from the United States District Court for the Western District of Texas. Appellants, plaintiffs below, are landowners whose land and other property was damaged by water that flowed from a break in an irrigation canal constructed, maintained and operated by the Bureau of Reclamation

of the United States Department of the Interior. Plaintiffs brought their actions under the Federal Tort Claims Act, 28 U.S.C. § 1346 et seq., alleging that the Government was negligent in that: (1) It failed to inspect the canal at the place where the break occurred; (2) it failed to maintain a sufficient number of employees for proper inspection and maintenance of the canal; (3) it allowed the water to rise to a high level when it knew of the gopher problem in the canal; (4) it failed to inspect the north wall of the canal even after a report that there was an apparent leak in that wall; and (5) it did not furnish properly equipped vehicles for its ditchriders to inspect the area in question.

The Government defended on the theory that the break was caused by the burrowing of gophers and thus was an "act of God." The cause was tried to the court, and the court, unfortunately filing only sparse findings, found that the Government was negligent in failing to inspect the canal properly but that such negligence was not the proximate cause of the damages suffered by appellants.

After reviewing the entire evidence we are "left with the definite and firm conviction that a mistake has been committed," United States v. United States Gypsum Company, 1948, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746, and therefore we hold that the district court's finding that the Government's negligence was not the proximate cause of plaintiffs' injuries is clearly erroneous and must be reversed.

The evidence clearly established that the Government was negligent and that its negligence was the proximate cause of the injuries incurred by plaintiffs. The riverside canal is used to divert water from the Rio Grande to the farmers in the area for irrigation uses. The canal is approximately sixteen miles long, and at the point of the break is four feet deep and fifty feet wide. The canal was built of natural soil and its sloping banks are not lined with material impervious to water. Before the break took place, there had been heavy rains in the upper valley, and the extra water from these rains had been diverted into the canal for the benefit of the farmers. Five hundred cubic feet of water were in the canal "down to the point where the flood occurred." Although this was less than the designed capacity, it was higher than average.

The Bureau of Reclamation is responsible for the maintenance and operation of the canal. The Bureau employs ditchriders who daily inspect the canal and make recommendations for repair; they report weaknesses, irregularities or leaks in the canal. The ditchriders are responsible for the distribution of the water and control of the water level in the canal. The purpose of the inspections is to protect the land bordering the canal.

The senior ditchrider testified that from May 1, 1966 until August 22, 1966, the day of the break, the area in which the break occurred was not inspected closely by him because the road in that area is accessible only by foot or jeep and "hard to get to" since it is isolated between the canal and a drainage ditch. He further testified that the ditchriders have to cover a lot of ground and often do not inspect inaccessible places except every "once in awhile."

One of the main duties of the ditchriders is to watch for signs of gopher activity. There are six to eight breaks in the laterals every year, and ninety per cent of those breaks are caused by gophers. One of the ditchriders testified that he was sure that the break in question was caused by a gopher tunnel. There was also testimony to show that gopher activities can be checked. The Bureau's general foreman testified that the Government "has installed * * * many miles of what we call core walls in some of the worst areas. This is merely a curtain wall * * * to prevent gophers from tunneling back and forth in the bank." He also spoke of intermittent trapping and poisoning programs.

A United States border patrolman testified that while he was patrolling in

May of 1966 he observed a large amount of water in the area where the break later occurred. He further testified that the water was evidently "coming from the riverside canal," and that he reported this to two employees of the Bureau of Reclamation. Apparently, however, the Bureau never acted upon this information.

It is clear from the foregoing that the Government was derelict in its duties to maintain and operate the canal. The north wall of the canal broke because it was weak. It makes no difference whether the weakness was caused by a gopher or something else; the Government was obliged to find and repair hazards in the canal, and it failed to fulfill that obligation properly. The Government defended on the theory that the break was caused by an act of God, the burrowing of gophers. It is clear, however, that the Government was aware of gopher activity in the area and even took steps to prevent or remedy the hazards of gopher mischief. Thus it is obvious that the sudden, unforeseeable, catastrophic character of an act of God cannot be attributed to the burrowing of gophers in this area.

As provided in 28 U.S.C. § 1346(b), the question of whether the Government's negligence in failing to inspect properly the area where the canal broke was a proximate cause of the damages suffered by appellants is a question of Texas law since Texas is the place of the wrong. To be the proximate cause of an act or omission constituting negligence, the negligence must be the cause in fact of the damage and the damage must be of the nature that could have been foreseen by a reasonably prudent man. *See, e. g.,* McClellan v. Lee, 426 S.W.2d 635 (Tex.Civ.App., Houston—1968, no writ); Frantom v. Neal, 426 S.W.2d 268 (Tex.Civ.App., Fort Worth—1968, writ ref'd n. r. e.). The Government had every reason to believe that the area of the break should have been inspected more closely; this is especially true in light of the border patrolman's report of a suspected leak in the area. If the Government had inspected the canal with the care it should have, the break would have been avoided. The Government could have reasonably foreseen that a failure to inspect properly would eventually lead to a break and that a break would cause flood damage to the neighboring lands. Since the break and resulting flood would not have occurred but for the Government's negligence, and since the damage done by the flood was a reasonably foreseeable consequence of such negligence, we hold that the Government's negligence was a proximate cause of the harm done appellants. We therefore reverse and remand this cause to the district court for a determination of damages.

Reversed and remanded.