C. S. LENOIR, Plaintiff-Appellant,

v.

PORTERS CREEK WATERSHED DIS-
TRICT et al., Defendants-Appellees.

No. 76–1640.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 29, 1977.

Decided Oct. 3, 1978.
Rehearing and Rehearing En Banc
Denied Nov. 21, 1978.

D. J. Smith, Jr., Dann, Blackburn, Smith & Goldin, Alexander W. Dann, Jr., Memphis, Tenn., for plaintiff-appellant.

E. J. Harris, David O. Kemp, Bolivar, Tenn., for P.C. Watershed.

R. W. Elliott, Ripley, Miss., for P.C. Drainage.

W. J. Michael Cody, U. S. Atty., Daniel A. Clancy, Asst. U. S. Atty., Memphis, Tenn., William A. McTighe, Jr., for the United States.

Before EDWARDS and ENGEL, Circuit Judges and THORNTON, Senior District Judge.*

* Honorable Thomas P. Thornton, Senior Judge, United States District Court for the Eastern District of Michigan, sitting by designation.

ENGEL, Circuit Judge.

C. S. Lenoir appeals from a final judgment dismissing his civil action for flood damages to his lands located in Hardeman County, Tennessee.

Porters Creek is a small tributary of the Hatchie River which in turn joins the Mississippi River just north of Memphis, Tennessee. In 1959 the Soil Conservation Service of the United States Department of Agriculture, in cooperation with certain local agencies, promulgated a watershed plan pursuant to the federal Watershed Protection and Flood Prevention Act, ch. 656, 68 Stat. 666 (1954), *as amended,* 16 U.S.C. §§ 1001–1009 (1976). The plan affected the Porters Creek watershed in Hardeman County, Tennessee and Benton and Tippah Counties in Mississippi.[1]

One goal of the Watershed Plan was to improve 126,200 linear feet of the stream channel of Porters Creek. Plaintiff alleged that he owned 3,000 acres of land in Hardeman County through which the entire length of Porters Creek flows. On February 24, 1971, Lenoir granted an easement to the Porters Creek Watershed District over approximately 27 acres of that land:

> for or in connection with the construction, operation, maintenance and inspection of the following described works of improvement:
>
> > Channel Improvement of Porters Creek and its tributaries, as described in the Watershed Work Plan for Porters Creek Watershed Project, consisting of clearing, enlargement, excavation, and placing of waste excavation material, either or all.

The easement so granted included the right of ingress and egress at any time over the property and reserved to the Grantor "the right and privilege to use the first above-described land . . . at any time, in any manner, and for any purpose not incon-

sistent with the full use and enjoyment by the Grantee . . . ." Finally, it provided that "the Grantee is responsible for operating and maintaining the above-described works of improvement."

Lenoir's complaint further alleged that following modifications in the stream channel, which accelerated the drainage process, Porters Creek flooded his land and deposited sand and "other infertile sediment on plaintiff's one time rich pasture lands causing them to be unproductive and seriously and greviously (sic) impairing their ability to support plaintiff's livestock." He sought damages in the sum of $750,000.

On December 26, 1973, Lenoir filed suit in the United States District Court for the Western District of Tennessee. Named as defendants were the United States Department of Agriculture, the Porters Creek Watershed District of Hardeman County, Tennessee (Hardeman), the Porters Creek Drainage District of Tippah County, Mississippi (Tippah), the Hardeman Soil Conservation District and the Northeast Mississippi Conservation Service.[2]

In his complaint, as amended, Lenoir claimed that the defendants: (a) had negligently designed and constructed the Porters Creek Channel project so as to cause the flooding; (b) had breached their express or implied contracts to maintain the channel projects with the result that the creek was filled with sediment that had reduced its water-carrying ability and drainage capacity; (c) had created a public nuisance; (d) and had "permanently" deprived him of the use of his property, constituting an unconstitutional taking thereof without just compensation in violation of the Fifth and Fourteenth Amendments to the United States Constitution and of similar provisions in the Tennessee and Mississippi Constitutions.

In a series of orders entered by three separate judges of the District, all of Le-

---

1. Because the disposition of the case turned essentially upon the pleadings, the facts herein are recited primarily from the plaintiff's complaint.

2. The district court dismissed the latter two defendants, holding that the complaint failed to state a cause of action against them. No appeal was taken from that portion of the judgment. No individual defendants were named in the complaint.

noir's theories of recovery against all of the parties were ultimately dismissed and this appeal followed.

On April 15, 1975, the district court dismissed all state law claims for damages against Hardeman and Tippah on the ground that those agencies were engaged in governmental functions with regard to the Porters Creek project and thus were protected by governmental immunity. However, the district judge expressly held that principles of governmental immunity had no application to the inverse condemnation claims. By order of August 7, 1975, another judge of the district court denied Lenoir's motion to amend his complaint to add a trespass cause of action, finding that such a claim sounded in tort and would likewise be barred by governmental immunity. At the same time, the United States' motion to dismiss was granted on the ground that the contract and inverse condemnation claims against it could only be presented to the United States Court of Claims, and the tort claims were barred by the absolute immunity provided by Section 3 of the Flood Control Act of 1928, ch. 569, 45 Stat. 534, 535 (codified at 33 U.S.C. § 702c (1976)). The court also granted summary judgment to Hardeman and Tippah as to the state constitutional claims, on the grounds that the state provisions did not require compensation for negligent conduct and that the plaintiff had waived any rights he might have had by failing to process his complaints under certain statutory procedures provided by Tennessee and Mississippi law. Summary judgment was also granted in favor of Tippah on the Fourteenth Amendment claim, for the reason that defendant did not possess eminent domain powers over Lenoir's property, which admittedly lay solely within the boundaries of Tennessee.

Finally, a third order entered by a third district judge on February 26, 1976, dismissed the Fourteenth Amendment claim against Hardeman, on the ground that the watershed district had no statutory authority for the assessment of taxes for the payment of any judgment in inverse condemnation cases and thus Lenoir could maintain no civil action against Hardeman for such purpose. · The third order clearly indicated that the court had finally disposed of all claims as to all parties.

Rule 8(a)(1), Federal Rules of Civil Procedure, requires that a complaint shall contain "a short and plain statement of the grounds upon which the court's jurisdiction depends . . . ." An insistance upon this straightforward requirement of the Federal Rules would, we believe, have simplified the issues both before the trial court and on appeal. Instead we and the district court have been faced with an analytical miasma in which it has been particularly difficult to ascertain whether the court's diversity, federal question, or even pendent jurisdiction was invoked.

## I.

### UNITED STATES DEPARTMENT OF AGRICULTURE

#### A.

Lenoir sought recovery under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–680 (1976), on his claims of negligence and nuisance by Department of Agriculture employees. The district court ruled, however, that his claim against the Department was barred by 33 U.S.C. § 702c (1976), which provides that the United States shall not be liable for "any damage from or by floods or flood waters."[3]

3. 33 U.S.C. § 702c (1976) provides in part:
No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place: *Provided, however,* That if in carrying out the purposes of sections 702a, 702b to 702d, 702e to 702h, 702i, 702j, 702k, 702*l*, 702m, and 704 of this title it shall be found that upon any stretch of the banks of the Mississippi River *it is impracticable to construct* levees, either because such construction is not economically justified or because such construction would unreasonably restrict the flood channel, and lands in such stretch of the river are subjected to overflow and damage which are *not now overflowed or damaged by reason of the construction of levees on the opposite banks of the river it* shall be the duty of the Secretary of the Army and the Chief of Engineers to institute

■ The plaintiff insists that the provisions of Section 702c are limited only to those projects on the Mississippi River. He notes that Section 702 in the United States Code is titled "Mississippi River" and that certain language refers to flood control on the Mississippi from "the Head of the Passes to the mouth of the Ohio River." This view has not commended itself to those courts which have considered it.[4]

■ Lenoir argues that even if the United States cannot be held liable for negligent design or construction of the project, Section 702c is inapplicable to damages caused by the government's failure properly to maintain and operate the water project. Other circuits have indicated that Section 702c applies equally to negligence in the construction and maintenance of flood water structures. *E. g., Graci v. United States,* 456 F.2d 20, 25 (5th Cir. 1971); *Stover v. United States,* 332 F.2d 204, 206 (9th Cir.), *cert. denied,* 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964). In this respect, however, plaintiff relies primarily upon *Parada v. United States,* 420 F.2d 493 (5th Cir. 1970), and *Valley Cattle Co. v. United States,* 259 F.Supp. 12 (D.Hawaii 1966). We find these cases inapposite.

*Parada* involved flood damage from a canal used to divert water from the Rio Grande for irrigation use by farmers. It was clearly not a flood control structure and Section 702c was never even discussed by the court. Likewise, *Valley Cattle* involved a project altogether unconnected with flood control. However, the court upheld the government's liability on the ground that the flood resulted solely from the United States' negligent acts and not from any unusual climatic conditions. Our examination of relevant case law satisfies us that the exception to Section 702c in *Valley Cattle* is limited to those circumstances in which the sole cause of the injury was governmental negligence. *See Guy F. Atkinson Co. v. Merritt, Chapman & Scott Corp.,* 126 F.Supp. 406 (N.D.Cal.1954); *Stover v. United States,* 204 F.Supp. 477 (N.D. Cal.1962), *aff'd* 332 F.2d 204 (9th Cir.), *cert. denied,* 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964). Here the facts before us, framed both by plaintiff's complaint and by undisputed affidavits, establish that the injury to Lenoir's land occurred only after unusually heavy rains. Furthermore, we note that this narrowing construction of Section 702 has been rejected by some courts. *E. g., Lunsford v. United States,* 570 F.2d 221 (8th Cir. 1977).

■ In a final effort to sustain his tort claim against the United States, Lenoir relies upon the McCarran Amendment, ch. 651, § 208, 66 Stat. 560 (1952) (codified at 43 U.S.C. § 666 (1970)),[5] as proof of a waiver of

---

proceedings on behalf of the United States Government to acquire either the absolute ownership of the lands so subjected to overflow and damage or floodage rights over such lands.

4. *Stover v. United States,* 332 F.2d 204 (9th Cir.), *cert. denied,* 379 U.S. 922, 85 S.Ct. 276, 13 L.Ed.2d 335 (1964) (Feather River, Cal.); *Clark v. United States,* 218 F.2d 446, 452 (9th Cir. 1954) (Columbia River); *National Mfg. Co. v. United States,* 210 F.2d 263 (8th Cir. 1954) (Kansas River); *Peerless Serum Co. v. United States,* 114 F.Supp. 662 (W.D.Mo.1953) (Kaw River). The 1928 Act itself directed the appropriate agencies to prepare surveys for flood control projects "on all tributary streams of the Mississippi River system . . .." 45 Stat. 538. Also the Act contained a provision modifying plans affecting a project for the Sacramento River in California. 45 Stat. 539. Several courts have stated that the Flood Control Act of 1936, ch. 688, 49 Stat. 1570, which authorized flood control projects throughout the country, affirmed or reenacted Section 3 of the 1928 Act and thus clearly made it apply to all flood projects. *Callaway v. United States,* 568 F.2d 684, 686 (10th Cir. 1978); *Lunsford v. United States,* 570 F.2d 221, 227 (8th Cir. 1977); *National Mfg. Co., supra,* 210 F.2d at 270. Most persuasive perhaps is the plain language of Section 3 of the Act itself. It applies to floods "at any place." As the Eighth Circuit said, "The fact that the words Mississippi River 'have lingered on in the successive editions of the United States Code is immaterial.'" *National Mfg. Co., supra,* 210 F.2d at 274.

5. The McCarran Amendment, 43 U.S.C. § 666 (1970), states:

(a) Consent is given to join the United States as a defendant in any suit (1) for the adjudication of rights to the use of water of a river system or other source, or (2) for the administration of such rights, where it appears that the United States is the owner of

governmental immunity where water rights and disputes are involved. We read his argument as suggesting that the McCarran Amendment repealed by implication the immunity bar of Section 702c. We cannot agree. Clearly, the McCarran Amendment was designed for no other purpose than to allow the United States to be joined in suits where it was necessary to adjudicate all of the rights of various owners in a given stream. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 808, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). It suffices to say that Lenoir's action clearly does not involve an adjudication of water rights at all. We cannot read the McCarran Amendment as affecting the immunity from flood damage which is contained in Section 702c.

### B.

■ In dismissing the United States Department of Agriculture as a defendant, the district court held that the contractual and constitutional claims could be adjudicated only in the United States Court of Claims, implicitly ruling that it was without subject matter jurisdiction over those causes of action.

The Tucker Act, ch. 359, 24 Stat. 505 (1887), *as amended,* 28 U.S.C. §§ 1346(a)(2), 1491 (1976), grants to the Court of Claims jurisdiction to render judgment against the United States on claims founded "either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States . . .", limiting district courts to concurrent jurisdiction over those claims which do not exceed $10,000 in amount. Here it is uncon-

tested that Lenoir's claim vastly exceeds that amount.

Though not disputing the unavailability of the Tucker Act as a jurisdictional basis for his contract and constitutional claims, Lenoir urges that the district court possessed power to adjudicate these claims under a pendent jurisdiction theory, relying on *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). He states that the Federal Tort Claims Act provided the independent jurisdictional ground. Even assuming that Lenoir's cause of action under the Tort Claims Act was substantial enough to confer subject matter jurisdiction, we find that pendent jurisdiction has no application to a claim against the United States.

■ The United States cannot be sued without its consent. *United States v. Sherwood,* 312 U.S. 584, 61 S.Ct. 767, 85 L.Ed.2d 1058 (1941). The absence of such consent is considered a fundamental, jurisdictional defect. *Sherwood, supra,* 312 U.S. at 586, 61 S.Ct. 767; *Roberts v. United States,* 498 F.2d 520 (9th Cir.), *cert. denied,* 419 U.S. 1070, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *Gnotta v. United States,* 415 F.2d 1271 (8th Cir. 1969), *cert. denied,* 397 U.S. 934, 90 S.Ct. 941, 25 L.Ed.2d 115 (1970). When Congress consents to a suit, it may define the conditions under which it will permit such actions, *Honda v. Clark,* 386 U.S. 484, 87 S.Ct. 1188, 18 L.Ed.2d 244 (1967); *Melo v. United States,* 505 F.2d 1026 (8th Cir. 1974), including the courts in which the suit may be brought. *Minnesota v. United States,* 305 U.S. 382, 388, 59 S.Ct. 292, 83 L.Ed. 235 (1939).

---

·or is in the process of acquiring water rights by appropriation under State law, by purchase, by exchange, or otherwise, and the United States is a necessary party to such suit. The United States, when a party to any such suit, shall (1) be deemed to have waived any right to plead that the State laws are inapplicable or that the United States is not amenable thereto by reason of its sovereignty, and (2) shall be subject to the judgments, orders, and decrees of the court having jurisdiction, and may obtain review thereof, in the

same manner and to the same extent as a private individual under like circumstances: *Provided,* That no judgment for costs shall be entered against the United States in any such suit.

\* \* \* \* \* \*

(c) Nothing in this section shall be construed as authorizing the joinder of the United States in any suit or controversy in the Supreme Court of the United States involving the right of States to the use of the water of any interstate stream.

The Tort Claims Act confers jurisdiction upon the district court only for those claims arising out of "negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 1346(b) (1976). We are shown no instance in which it has been successfully contended that the Act allows a district court to assert jurisdiction over a claim which alleges either a wrongful taking of property or a violation of a contractual right.

 Though not considered by Lenoir, we also conclude that 28 U.S.C. § 1331 (1976), the general federal question provision, does not provide a jurisdictional basis on these facts. The Fifth Amendment "taking" claim "arises under the Constitution," and a remedy for a violation of this provision arguably does not require a waiver of sovereign immunity. However, a number of cases indicate that Congress has made the Court of Claims the exclusive and an adequate forum for the Fifth Amendment claims, at least those over $10,000. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* —— U.S. ——, —— n.15, 98 S.Ct. 2620, 2629 n.15, 57 L.Ed.2d 595 (1978); *Regional Rail Reorganization Act Cases,* 419 U.S. 102, 127, 95 S.Ct. 335, 42 L.Ed.2d 320 (1974); *Yearsley v. Ross Construction Co.,* 309 U.S. 18, 21, 60 S.Ct. 413, 84 L.Ed. 554 (1940); *Hurley v. Kincaid,* 285 U.S. 95, 103–104, 52 S.Ct. 127, 76 L.Ed. 521 (1932). We conclude that 28 U.S.C.

§ 1346(a)(2) expressly limits the district court's jurisdiction over these types of claims against the government to those not exceeding $10,000 in amount and that to utilize the court's federal question or pendent jurisdiction as to the Fifth Amendment claim would override the express policy of Congress embodied in the Tucker Act.[6]

## II.

## THE STATE TORT CLAIMS

 At the outset it is clear that the Eleventh Amendment does not bar the claims for monetary relief against Hardeman and Tippah, and no such contention was made either in the district court or here, since that amendment does not extend to counties, municipal corporations, and similar local entities that are not arms of the state. *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). This determination turns in part on the nature of the governmental body under state law. *Id.* We conclude that however else they might be characterized, the Porters Creek Watershed District of Hardeman County and the Porters Creek Drainage District of Tippah County are sufficiently independent political units not to to be considered as a part of the state or within the immunity provisions of the Eleventh Amendment.[7]

---

**6.** Lenoir alleged that 33 U.S.C. § 702c violated the due process and just compensation clauses of the Fifth Amendment to the extent it permitted a permanent taking of property without compensation. The district court declined to rule on this issue, holding that it was a matter for a three-judge court under former 28 U.S.C. § 2282 (1970) (repealed 1976). Because this suit was initiated prior to August 13, 1976, the requirements of that statute remain potentially applicable. Act of Aug. 12, 1976, Pub.L.No.94–381, § 7, 90 Stat. 1119 (codified at 28 U.S.C. § 2284 note (1976)).

While we observe that the plaintiff has not sought to enjoin the general application of Section 702c, *see Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 152–55, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), we conclude that the question is more properly one for decision by the United

States Court of Claims and thus do not find it necessary to rule upon the question. In considering the "taking" claim for damages, the Court of Claims may consider the validity of Section 702c. *Gentry v. United States,* 546 F.2d 343 (Ct.Cl.1976). Moreover, we note that Lenoir's complaint is framed primarily as a request for damages, not for a declaratory judgment. *See also Duke Power Co., supra,* —— U.S. at —— n.15, 98 S.Ct. 2629.

**7.** The Eleventh Amendment to the United States Constitution states:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Under Tennessee law, watershed districts like Hardeman are bodies "politic and corporate." Tenn.Code Ann. § 70–1818 (Repl. Vol.1976). As such they may "sue and be sued," may hold and acquire property and may issue certain bonds and incur indebtedness. *Id.* The Tippah District appears to be similarly constituted under Mississippi law. The parties, however, hotly dispute the question of whether these defendants are immune from tort liability under their respective state laws to suits and the extent of that immunity.[8]

 Based on either diversity or pendent jurisdiction state law governs consideration of the several state claims raised in the complaint and dismissed by the district court.[9] Therefore, unless we are bound under state law to recognize an immunity from liability for given actions, we treat these defendants as parties who are capable of being sued in the federal courts. The district court would have subject matter diversity jurisdiction over any state claims which Lenoir might properly otherwise bring against these defendants, at least after the dismissal of the United States as a co-defendant in the action.[10]

Plaintiff's amended complaint charged that Hardeman and Tippah had been guilty of negligence in the design and maintenance of the watershed project and of maintaining a nuisance, claims sounding in tort and thus governed by the respective laws of Mississippi and Tennessee.[11] If both the Hardeman and Tippah districts are governmental agencies normally capable of being sued, do their respective state constitutions and laws nevertheless confer upon such agencies a general immunity from tort suits? Both defendants claim they do, and the district court agreed.

 In 1973 the Tennessee Governmental Tort Immunity Act, Tenn.Code Ann. §§ 23–3301 *et seq.* (Supp.1977), removed governmental immunity as a defense to a large class of tort suits with regard to local, but not state, units of government. *Tennessee Department of Mental Health and Mental Retardation v. Hughes,* 531 S.W.2d 299 (Tenn.1975). However, that Act applied to claims arising after January 1,

---

8. Since no individuals are sued, we do not consider the many questions of absolute or qualified immunity of individual agents of the defendants.

9. It is settled that a state is not a "citizen" for purposes of diversity jurisdiction under 28 U.S.C. § 1332. *Postal Tel. Cable Co. v. Alabama,* 155 U.S. 482, 487, 15 S.Ct. 192, 39 L.Ed. 231 (1894). However, political subdivisions of a state, unless simply "the arm or alter ego of the state" are citizens of the state for diversity purposes. *Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1783, 36 L.Ed.2d 596 (1973). The independent or alter ego status of a political subdivision is generally determined by examining state law. 411 U.S. at 718–19, 93 S.Ct. 1783. Here it is alleged that Lenoir *is* a citizen and a resident of the State of Texas. We conclude that Hardeman is a citizen of Tennessee and Tippah is a citizen of Mississippi. Likewise, the amount of damages is alleged to be in excess of $10,000.

Alternatively, jurisdiction over Hardeman and Tippah exists under 28 U.S.C. § 1331. Lenoir alleged that Hardeman and Tippah took his property without just compensation, in violation of the Fifth and Fourteenth Amendments. This claim was sufficiently *substantial* to support jurisdiction under the federal question provision. Thus the district court had pen-

dent jurisdiction over the state causes of action against Hardeman and Tippah.

10. While the Department of Agriculture would not have a citizenship for purposes of diversity, it was completely dismissed from the action, as were the two other state defendants, the Hardeman County Soil Conservation District and the Northeast Mississippi Soil Conservation Service.

11. A claim in the amended complaint that the defendants had violated their express or implied contractual obligations was not separately dealt with below and is not specifically addressed by the parties on appeal. However, it is clear that all theories of recovery were dismissed. The district court granted the motions to dismiss the tort claims against Hardeman and Tippah on the theory that both of these agencies were clothed with governmental immunity by their states from actions on this account and that the immunity had not been waived. The district court's order of April 15, 1975, however, expressly held that the principles of governmental immunity had no application to the inverse condemnation claims made against these defendants. We decline to reach the propriety of the dismissal of the contract claims, as Lenoir has not raised this issue on appeal.

1976. Since the complaint here was filed on December 26, 1973, and alleged tortious conduct before that date, the Act has no application. Our circuit in *Sawyer v. Methodist Hospital,* 522 F.2d 1102 (6th Cir. 1975), observed that recent opinions by the Tennessee Supreme Court suggested that the state might soon abandon the entire doctrine of sovereign immunity. However, a subsequent opinion by the state's highest court held that the new Act was a sufficient response to its concerns and, therefore, would continue to apply immunity principles as to actions arising prior to the effective date of the Act. *Cooper v. Rutherford County,* 531 S.W.2d 783 (Tenn.1975).

While neither the parties nor the district court discussed at length the general principles of governmental immunity in Tennessee, that state has recognized that municipal corporations are immune from tort liability if the damage occurs in the performance of governmental functions, but that there is no immunity if the municipality was engaging in a proprietary or private function. *City of Memphis v. Bettis,* 512 S.W.2d 270 (Tenn.1974). The distinction is difficult and is based upon the facts of each case. 512 S.W.2d at 272. The Tennessee Supreme Court has stated:

> The purpose and character of the undertaking, and the method of its operation, determine whether it is public or private.

512 S.W.2d at 272.

On appeal Lenoir urges that the Hardeman Watershed District is not a government entity, but that if it is such a body, it was nonetheless performing a purely proprietary function here to which no immunity would attach in a suit for damages arising out of that activity. Lenoir cites no Tennessee authority for these contentions, although he does cite a number of cases from other jurisdictions holding that drainage or irrigation districts are not entitled to governmental immunity. The district court held that Hardeman was a governmental agency, relying upon *In re Forked Deer Drainage District,* 133 Tenn. 684, 182 S.W. 237 (1916), and that the district was in fact fulfilling a governmental

function in undertaking the channelization project, citing *Gulf Refining Co. v. Mark C. Walker & Son Co.,* 124 F.2d 420 (6th Cir.), *cert. denied,* 316 U.S. 682, 62 S.Ct. 1268, 86 L.Ed. 1755 (1942). Neither the parties nor the court found any Tennessee judicial interpretation of the character of watershed districts in the state as contrasted with those of drainage districts. Nonetheless if a drainage district in Tennessee has been judicially construed as a governmental agency, it would seem even more likely that a watershed district would enjoy similar status. We think it is clear that Hardeman is a governmental, rather than a private, corporate body.

Somewhat more difficult is the question of whether in rechanneling the Porters Creek, the district was exercising a "governmental function." The Hardeman Watershed District was formed pursuant to the Tennessee Watershed District Act of 1955, Tenn.Code Ann. §§ 70–1801 *et seq.* (Repl.Vol.1976). Such a district is given numerous powers but the more relevant include:

. . . . .

D. To conserve soil and water and to retard floods and develop the water resources of the district.

. . . . .

G. To construct any drainage works or improvements; to construct any works or improvements for the control, retention, diversion, or utilization of water; to retard runoff of water and soil erosion; to construct ditches, channel improvements, dikes, levees, flood prevention reservoirs, water conservation reservoirs, or irrigation reservoirs or facilities, parks, and other recreational facilities, and to repair, improve and maintain any of said improvements or structures.

. . . . .

O. To exercise all the powers conferred upon levee and drainage districts by chapters 7 to 17, inclusive, of this title.

. . . . .

V. To take such steps as deemed necessary by its board of directors for the promotion and protection of public health within the boundaries of the district, and to enter into agreements with private nonprofit corporations, the Tennessee department of public health, or any local public health unit, the state stream pollution board, or any other federal, state or local agency for that purpose.

. . . . .

Tenn.Code Ann. § 70–1818 (Repl.Vol.1976).

We believe it is apparent that since a watershed district under Tennessee law is permitted not only to exercise the powers conferred upon drainage districts but also to have the additional authority above cited, its functions are generally of a broader governmental nature and that, therefore, there is even less reason to believe that in Tennessee a watershed district would be formed for solely a proprietary as contrasted to a governmental purpose.

In *Gulf Refining Co., supra,* several defendants, including Shelby County, Tennessee, were sued for negligence in building a levee on Gulf's land. The project was funded under one of the federal flood control acts with United States funds being provided for the construction of levees. The county secured easements and rights of way along the river. However, in working on the levee, a subcontractor damaged a gasoline pipe owned by Gulf. Our circuit upheld a district court dismissal of the suit against the county on the ground that "it was engaged in the work of a public improvement in pursuance of its governmental functions, and so not liable in tort for negligence of its agents, employees, or an independent contractor . . . ." 124 F.2d at 423. While *Gulf Refining* involved a county and not a watershed or drainage district and while conceivably there could be, in fact, a higher likelihood of immunity for county government, *see Metropolitan Government v. Allen,* 220 Tenn. 222, 415 S.W.2d 632 (1967), other Tennessee cases concerning drainage districts emphasize the public purpose of those bodies. Also the close similarity of drainage districts to wa-tershed districts supports a conclusion that Hardeman was engaging in a strictly governmental function. Thus in *Pritchard v. Johnson-Tobey Construction Co.,* 155 Tenn. 571, 296 S.W. 17 (1927), the Tennessee Supreme Court expressly found that drainage districts were instrumentalities of the county and of the state, observing that the Board of Directors of a drainage district is a "quasi public corporation, charged with the duty of executing a governmental purpose as a governmental agency." 296 S.W. at 19.

▮ Lenoir's second challenge to the dismissal of the damage claims against Hardeman is its claim that the district court erred in concluding that there had not in fact been a waiver of any immunity by the watershed district. In this respect he points to the statute giving Hardeman the power "to sue and be sued by its corporate name." Tenn.Code Ann. § 70–1818(B) (Repl.Vol.1976). The district court held that the language was insufficient to allow tort claims against Hardeman, relying primarily upon *Phillips v. Marion County,* 166 Tenn. 83, 59 S.W.2d 507 (1933). In *Phillips,* the Tennessee Supreme Court indicated that a waiver of immunity must be clearly and precisely stated, relying upon the proscription of Article I, Section 17 of the Tennessee Constitution providing that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." The court in *Phillips* held that this "provision carries the positive implication that suits shall not be brought otherwise, or at all, unless the authority be affirmatively given by statute." 59 S.W.2d at 508. *See also Brewington v. Brewington,* 215 Tenn. 475, 387 S.W.2d 777 (1965), observing that the legislation authorizing suit must be "so plain, clear, and unmistakable in its provisions as to the manner and form in which such suit may be brought as to leave nothing to surmise and conjecture." 387 S.W.2d at 779.

Thus we find that the simple employment of the language "sue and be sued" in a corporate charter is not, without more, sufficient in Tennessee to create a waiver of

any sovereign immunity. *Cf. Martin v. University of Louisville*, 541 F.2d 1171, 1175 n.4 (6th Cir. 1976) (similar construction under Kentucky law). The language which our court held to be an express waiver of immunity in *Soni v. Board of Trustees of the University of Tennessee*, 513 F.2d 347 (6th Cir. 1975), *cert. denied*, 426 U.S. 919, 96 S.Ct. 2633, 49 L.Ed.2d 372 (1976), is not present here. In *Soni*, we held as a full and adequate waiver of immunity a provision in the charter of the University of Tennessee that the school may " 'sue and be sued, plead and be impleaded, *in any court of law or equity in this State or elsewhere.*' We are not unmindful that a waiver of a constitutional right must appear clearly and may not be lightly inferred. *Edelman v. Jordan*, 415 U.S. 651, 673, 94 S.Ct. 1347, [39 L.Ed.2d 662] (1974)." 513 F.2d at 352 (emphasis added).

■■■■ Concerning the tort claims against Tippah, Lenoir presents the identical arguments except that he does not contend that if immunity exists, it has been waived. In contrast to Tennessee law, there appears to be a fairly clear judicial determination in Mississippi that drainage districts, such as Tippah, are in fact immune from tort liability. Drainage districts in Mississippi are governmental agencies. In *Evans v. Bankston*, 196 Miss. 533, 18 So.2d 301 (1944), the Mississippi Supreme Court stated, "These districts are, therefore, political subdivisions of the state—they are governmental agencies, as well as private enterprises." 18 So.2d at 303. And we find controlling on the question the precise holding of the Mississippi Supreme Court that drainage districts are performing governmental functions in connection with flood control measures. *Stephens v. Beaver Dam Drainage Dist.*, 123 Miss. 884, 86 So. 641 (1921). *See also Stewart v. State Highway Commission*, 166 Miss. 43, 148 So. 218 (1933). Accordingly, we hold that as to the tort claims alleged against Hardeman and Tippah, they enjoy immunity from suit under their respective state laws.

## III.

## THE STATE CONSTITUTIONAL VIOLATIONS

Lenoir claims that Hardeman and Tippah each violated his rights under their respective state constitutions by taking his property through inverse condemnation without just compensation. Because it is quickly disposed of, the claim against Tippah is first discussed.

■■■■ The district court granted summary judgment to Tippah upon this reasoning:

The Mississippi Supreme Court, . . . in *Stephens v. Beaver Dam Drainage District*, 123 Miss. 884 [86 So. 641] (1921), has interpreted . . . the Mississippi Constitution as inapplicable to support claims based on acts of negligence, reasoning that the state legislature in complying with the state constitutional provision had enacted the only appropriate procedure available to landowners to receive compensation for proposed improvements and failure to process one's claim accordingly constituted a waiver of this right. *See Minyard v. Pelucia Drainage District*, 133 Miss. 847 [98 So. 225] (1923).

Section 17 of the Mississippi Constitution provides that:

Private property shall not be . . . damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law . . . .

In *Stephens*, the Mississippi Supreme Court construed Section 17 not to apply to:

. . . liability vel non of a corporation for the unauthorized acts of its officers and agents, which liability must still be determined by the rules of the common law as modified by statute. This section of the Constitution was complied with by the Legislature in enacting the statute here in question by the provision therein . . . which provision does not contemplate the allowance of compensation of damages resulting from negligence, but for such only as will result from the proper construction of the proposed improvement.

*Stephens v. Beaver Dam Drainage District,* 86 So. at 641. Thus the constitutional protection does not extend to negligent conduct and the state provides under state law an adequate remedy.

Subsequent cases appear to have upheld *Stephens'* interpretation of Section 17. *State Highway Commissioner v. Knight,* 170 Miss. 60, 154 So. 263 (1934); *State Highway Commission v. McClendon,* 212 Miss. 18, 53 So.2d 35 (1951); *Belzoni Drainage Dist. v. Cobb,* 137 Miss. 393, 102 So. 259 (1924). We, therefore, conclude that upon the facts pleaded by Lenoir, he would possess no cause of action under Mississippi law for violation of his rights under Section 17 of the Mississippi Constitution.

■ Lenoir alleged a taking by Hardeman under the Tennessee Constitution. Article I, Section 21 of the Tennessee Constitution provides:

> That no man's particular services shall be demanded, or property taken, or applied to public use, without the consent of his representatives, or without just compensation being made therefor.

The district judge concluded that in some way Lenoir's rights under the Tennessee Constitution are no different from those under Mississippi's Constitution. Lenoir does not indicate that any case law in Tennessee requires a different result. Thus, in the absence of any precise decisional law on the issue, we accord considerable weight in this case to the interpretation of the law of Tennessee by a federal district judge located in that state who, therefore, would be possessed of a greater sensitivity to that state's interpretation of its own laws. *Martin v. University of Louisville, supra,* 541 F.2d at 1176 n.7, and cases cited therein.

## IV.

## THE FEDERAL CONSTITUTIONAL CLAIMS

Lenoir's amended complaint alleges that the action of the Hardeman and Tippah districts amounted to a taking without payment of just compensation by those agencies of government, contrary to the provisions of the Fifth Amendment as embodied in the Fourteenth Amendment to the Constitution of the United States.

Construed in the light most favorable to plaintiff, Lenoir's complaint alleged that although he had on February 24, 1971, granted to Hardeman a limited easement over 27 acres of his land, the defendants and the United States effectively took by inverse condemnation an easement which vastly exceeded the limited scope of that grant. In its second order, the district court, in dismissing other claims, left these claims undisturbed and it was not until February 26, 1976, that another judge of the same district undertook to dismiss these remaining claims. As his sole basis for dismissal, the district court concluded that even if a "taking" had occurred violative of the Federal Constitution, it nevertheless was not actionable because there was no means by which to satisfy the judgment and that, therefore, no right could exist without the presence of a remedy. In essence, the court held that because no statutory provision existed in the state laws of Tennessee or Mississippi for the payment of any judgment which might be rendered against them for a violation of the plaintiff's federally guaranteed constitutional rights, no right of recovery existed. We cannot agree.

If such a constitutional right existed and if Lenoir had standing to assert it in a court of the United States, that right could not be defeated by a state governmental agency which was not clothed with an immunity under the Eleventh Amendment.

■ Neither the district court nor the parties here have seriously contended that "a taking of property" under the Fourteenth Amendment of the Constitution must invariably amount to an actual physical appropriation. "[I]t is plain today that nonacquisitive governmental action may amount to a taking in a constitutional sense." Nowak, Rotunda & Young, *Constitutional Law* 440 (1978). In *United States v. Causby,* 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946), the Supreme Court held that frequent low altitude flights of government planes over a chicken farm re-

sulted in the imposition of a servitude over the property that required an award of just compensation. And in *Griggs v. Allegheny County*, 369 U.S. 84, 82 S.Ct. 531, 7 L.Ed.2d 585 (1962), the Supreme Court similarly held that the establishment of a county-owned airport next to residential property could constitute a taking if the flight and operation of the airport made the property unusable for residential purposes. We see no effective differences between those facts and the facts alleged here that Lenoir's property was rendered useless for its purposes of farming by the flooding of it and the constant deposit of silt which rendered it infertile.

As earlier noted, most cases of federal taking of private property by inverse condemnation are heard in the United States Court of Claims, necessarily. It, therefore, follows that the law of inverse condemnation has primarily developed in that court. Thus in the Court of Claims well-defined definitions of the rule have developed, definitions which are, we believe, consistent with the guidelines of *Causby* and *Griggs*. In *Barnes v. United States*, 538 F.2d 865 (Ct.Cl.1976), that court summarized the law of "taking" where it was effected by flooding.

> Over the years the decisions have developed the law of eminent domain as applied to instances of flooding. Generally speaking, property may be taken by the invasion of water where subjected to intermittent, but inevitably recurring, inundation due to authorized Government action. *United States v. Cress*, 243 U.S. 316, 37 S.Ct. 380, 61 L.Ed. 746 (1917). We have so held in numerous cases, *e. g.*, *Hartwig v. United States*, 485 F.2d 615, 619–20, 202 Ct.Cl. 801, 809 (1973); *King v. United States*, 427 F.2d 767, 769, 192 Ct.Cl. 548, 551–52 (1970); *Fromme v. United States*, 412 F.2d 1192, 1196, 188 Ct.Cl. 1112, 1118 (1969); *National By-Products, Inc. v. United States*, 405 F.2d 1256, 1273, 186 Ct.Cl. 546, 576 (1969); *B Amusement Co. v. United States*, 180 F.Supp. 386, 389, 148 Ct.Cl. 337, 341–42 (1960); *North Counties Hydro-Elec. Co. v. United States*, 151 F.Supp. 322, 323, 138

Ct.Cl. 380, 383, *cert. denied*, 355 U.S. 882, 78 S.Ct. 149, 2 L.Ed.2d 112 (1957). A constitutional taking resulting from such flooding is not limited to instances of obvious overflowing of a river's banks. The just compensation clause of the fifth amendment has been found likewise applicable in cases of percolation or rising ground water. *United States v. Kansas City Life Ins. Co.*, 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277 (1950). A taking may result where Government-induced deposition of sediment in a riverbed causes the river to overflow its banks. *Cotton Land Co. v. United States*, 75 F.Supp. 232, 109 Ct.Cl. 816 (1948). The cases disclose the rule that the permanent, intermittent flooding which amounts to a taking must be frequent, *Fromme v. United States*, *supra*, 412 F.2d at 1196–97, 188 Ct.Cl. at 1118–19, and productive of substantial damage, *United States v. Cress, supra* [243 U.S.] at 328 [37 S.Ct. 380]. Government-induced flooding not proved to be inevitably recurring occupies the category of mere consequential injury, or tort. In such cases recovery is not authorized in this court. 28 U.S.C. § 1491 (1970); *Sanguinetti v. United States*, 264 U.S. 146, 44 S.Ct. 264, 68 L.Ed. 608 (1924); *Bedford v. United States*, 192 U.S. 217, 225, 24 S.Ct. 238, 48 L.Ed. 414 (1904); *Hartwig v. United States, supra; National By-Products, Inc. v. United States, supra; Columbia Basin Orchard v. United States*, 132 F.Supp. 707, 710–11, 132 Ct.Cl. 445, 452 (1955).

538 F.2d at 870–71.

■ Construed most favorably to the plaintiff, Lenoir has charged that the defendants' conduct has resulted in injury and in a flowage easement which vastly exceeded the scope of the proposed improvement to which he consented. If this conduct under the cases cited amounts to inverse condemnation under the Fifth Amendment, we see no reason whatever why such conduct should not likewise amount to an unlawful violative taking under the Fourteenth Amendment. In *Gordon v. City of Warren*, 579 F.2d 386 (6th Cir. 1978), Judge Lively,

speaking for our court, addressed this same question in a similar case involving not a watershed or drainage district but a municipality. Recognizing that a cause of action may exist independent of the Civil Rights Act but based solely upon the deprivation of a right guaranteed by the Federal Constitution, and premised upon a district court's federal question jurisdiction under 28 U.S.C. § 1331, Judge Lively held that an action might apply against a municipality for damage suffered by taking of the plaintiffs' property by that municipality without just compensation, even though no physical acquisition took place. There, the plaintiffs had alleged and the Michigan Supreme Court had earlier held, that the passage of an ordinance depriving plaintiffs of the right to the use of a 200 ft. setback area without compensation could amount to a violation of rights guaranteed under the Fifth and Fourteenth Amendments. Noting that earlier constructions of the Fourteenth Amendment had held that it was not intended to embody the precise history of the Fifth Amendment, Judge Lively observed that in *Chicago, Burlington & Quincy R.R. Co. v. Chicago,* 166 U.S. 226, 17 S.Ct. 581, 41 L.Ed. 979 (1897), the Supreme Court reversed its earlier ruling in *Davidson v. New Orleans,* 96 U.S. 97, 24 L.Ed. 616 (1878), to hold that the just compensation requirement embodied in the Fifth Amendment is included in the Due Process Clause of the Fourteenth. We have been cited no cogent authority nor have we found any which reasonably suggests that the constitutional ban against taking without compensation under the Fifth Amendment has different parameters or is not co-extensive with that which has been incorporated into the Fourteenth Amendment by the express holding of the Supreme Court in *Chicago, Burlington & Quincy R.R. Co. v. Chicago, supra.*

Likewise, Judge Lively went on to observe that our circuit has consistently upheld claims of a direct right of action against municipal corporations for damages arising when those corporations deprived the plaintiff of his property without due process and just compensation in violation of the Fifth and Fourteenth Amendments. *Wiley v. Memphis Police Department,* 548 F.2d 1247, 1254 (6th Cir.), *cert. denied,* 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 78 (1977); *Amen v. City of Dearborn,* 532 F.2d 554, 559 (6th Cir. 1976); *Foster v. City of Detroit,* 405 F.2d 138 (6th Cir. 1968).

As Judge Lively observed in *Gordon v. City of Warren* :

> The reasons for holding that a municipal corporation may not be sued under 42 U.S.C. § 1983 do not seem to apply to a direct action based on a claim that private property has been taken for public use without compensation. Unlike § 1983, the 14th Amendment does not refer to "person[s]." Moreover, § 1983 was enacted to "create [ ] a species of tort liability" in favor of persons deprived of constitutional rights. *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978). The government has the right to take private property for public uses as an attribute of sovereignty. However, under our constitution it is a condition of the exercise of this authority that just compensation be paid. When a government takes private property without payment of just compensation it does not commit a mere trespass, the typical property tort. Rather, it abuses one of its sovereign powers and even though the requirements of procedural due process may be scrupulously observed, there has been a deprivation of due process in the sense of fundamental fairness or "natural equity." *Chicago, Burlington & Quincy R.R. Co. v. Chicago, supra.* The Supreme Court stated in *United States v. Dickinson,* 331 U.S. 745, 748, 67 S.Ct. 1382, 1385, 91 L.Ed. 1789 (1947),

> > The Fifth Amendment expresses a principle of fairness and not a technical rule of procedure enshrining old or new niceties regarding "causes of action"—when they are born, whether they proliferate, and when they die.

> Whatever may be the ultimate determination by the Supreme Court with respect to the existence of direct causes of action under the 14th Amendment to re-

cover damages for torts of a more personal nature, we conclude that a direct cause of action does exist against municipalities to recover damages resulting from a taking of private property for public use without just compensation.

579 F.2d at 391.

If the protection of the Fourteenth Amendment is effectively to be guaranteed to citizens of the United States, the basis for denial of that relief employed by the district court here would appear to have little or no validity. While Tennessee and Mississippi might well be empowered to limit the application of their own state constitutional protections to those instances in which state law provides specifically a means of recompense, surely plaintiff's federal right cannot be so easily circumscribed. We need not here concern ourselves with the precise manner in which any judgment in damages is to be recovered from the governmental units here involved. It is enough for our purposes at this time to hold that a cause of action exists under the Fourteenth Amendment and that the jurisdiction of the United States District Court over that cause of action existed under 28 U.S.C. § 1331.

In summarily disposing of the several claims embodied in plaintiff's complaint, the district court did not address several other grounds for dismissal raised by the appellees as alternative bases for relief. The parties have not addressed those issues here by cross-appeal or otherwise, and we do not, therefore, reach them.

Accordingly the judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent herewith.